J-S53030-20

2021 PA Super 12

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARYL WILLIAMS | : | |
| | : | |
| Appellant | : | No. 2081 EDA 2019 |

Appeal from the PCRA Order Entered June 18, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-1221521-1987

BEFORE:   SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

OPINION BY LAZARUS, J.:                        **FILED:  JANUARY 25, 2021**

Daryl Williams appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing, as untimely, his fourth petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. After careful review, we vacate and remand for an evidentiary hearing.

In February 1989, a jury convicted Williams of first-degree murder[1] and possessing an instrument of crime (PIC).[2]  The trial court set forth the facts underlying the case as follows:

> On October 21, 1987, at about 7:00 p.m.[,] several young men known as the "Gratz Street Boys" entered Trim's Meat Market at [18th] Street and Montgomery Avenue, threatened the employees, pushed over a display case[,] and then ran outside.  The

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a)(1).

[2] 18 Pa.C.S.A. § 907(a)(1).

employees from the store pursued the "Gratz Street Boys" up and down [18th] Street. The deceased[,] Derrick Whitmore, and his friend, observing the fight from the deceased['s] home at 1828 N. [18th] Street, came to the corner of [18th] Street and Montgomery Avenue to find out what was happening. They position[]ed themselves on the southwest corner on the opposite side of the street from Trim's Meats.

In the meantime, a car with two or three men[,] including [Williams,] . . . drove up to the front of Trim's Meats[.] [The] men went inside for a short time, came back outside[,] and were getting into their car when someone from the crowd threw a bottle at their car. When the bottle broke in the street near the car, [Williams] pulled out a .45 caliber automatic weapon and fired [it] into the crowd hitting[,] the deceased once in the back of the head causing his death.

Trial Court Opinion, 7/7/89, at 1-2.

A jury trial was held from February 6-15, 1989; at trial, two of three[3] eyewitnesses were either unable to or unwilling to positively identify Williams as the shooter.[4] The jury convicted Williams of the above-cited offenses. The court sentenced him to life imprisonment without the possibility of parole for murder, with a concurrent 2½-5 years' imprisonment for PIC. Williams filed a direct appeal from his judgment of sentence, challenging the weight of the

---

[3] Eyewitness Derrick Lamont Allen, positively identified Williams at trial as the man who fired the fatal shot. N.T. Jury Trial, 2/8/89, at 364.

[4] Eyewitness Ollie Minor testified that while he was present at the shooting, he was unable to identify Williams as the shooter. N.T. Jury Trial, 2/8/89, at 253, 257, 263. The Commonwealth, via a detective, introduced Minor's out-of-court statement identifying Williams as the shooter as substantive evidence. *Id.* at 258; 261-62. Similarly, when eyewitness Dwayne Jeffrey Murray did not positively identify Williams at trial, stating he "th[ought]" Williams was the shooter, but did not get a good look at him the night of the shooting, the Commonwealth introduced Murray's prior statement identifying Williams as the shooter as substantive evidence. *Id.* at 299-320.

evidence and the introduction of testimony concerning Williams' alleged drug trafficking. Our Court affirmed his judgment of sentence. ***Commonwealth v. Williams***, 573 A.2d 1161 (Pa. Super. filed Feb. 20, 1990) (unpublished memorandum decision). Williams did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

Over the past thirty years, Williams has filed repeated collateral challenges to his convictions.[5] In his latest attempt, he seeks PCRA relief based upon new evidence pertaining to a cooperating Commonwealth witness, David Eisner. Eisner and Williams shared a jail cell for two weeks at the Montgomery County Prison in July 1988. On the first day of Williams' trial, Eisner gave the police the following statement[6] regarding the instant shooting:

> [Williams] said that in the winter time of 1987 . . . he rolled up to the corner [of 33rd and Dauphin Streets in North Philadelphia where] there was a store . . . and he said I think there was a fight going on. Williams said something about 2 parked cars and he got out of a brown AMC he was driving and shot the mother[^]u[*]ker for trying to take over the corner. Williams said he then swapped cars and got into a Eldorado[;] I think was white. Williams once said there was a girl and guy who were witnesses, but it was taken care of and the[ir] testimony wouldn't be any good. He also said

---

[5] Williams filed PCRA petitions in June 1992 (*pro se*), April 2000, and June 2012 (*pro se*); all were denied.

[6] Because the prosecutor did not learn about Eisner's existence until February 6, 1989—the first day of trial— defense counsel was not made aware of the Commonwealth's intention to call Eisner as a witness until four days into trial, on February 9, 1989. The delay in listing Eisner as a witness was a result of the fact that he did not come forward with the statement about Williams' involvement in the shooting until February 6th.

he got rid of the gun, he didn't say where or what caliber []
it was, but he did say it was a pistol. I think he shot the
guy once or twice. One time he mentioned he or his cousin
were from 21st & Lehigh. I know the shooting was in North
Philly and that the drug corner was 33rd and Dauphin, but I
am not sure exactly where the shooting took place. Williams
said he was gonna beat the case because [] the two
witnesses won't give damaging testimony. He also said if
he needed any money to beat the case a guy named
Anthony, he called ["]Ant,["] would give him whatever he
needed.

Investigation Interview Record, 2/6/89, at 1-2.[7] Eisner's statement was
admitted as an exhibit at trial.

At Williams' trial, Eisner testified that Williams confessed to the instant
offenses. N.T. Jury Trial, 2/10/89, at 553 ("He told me that he was down for
a homicide . . . [s]temming from an incident that happened in North
Philadelphia in the winter of [']87)."). Eisner also testified that he had been
convicted of burglary and retail theft in 1979, that he was currently serving
1½-5 years in prison for violating his probation by committing retail theft, and
that he was going to be serving a sentence for escape. *Id.* at 523-24, 551-
52, 63. The trial judge precluded Eisner from testifying regarding where he
was imprisoned or that he met Williams in Montgomery County Prison, *id.* at
540,[8] but permitted counsel to question Eisner "about any deal . . . [or] any

---

[7] At Williams' trial, Eisner testified he voluntarily gave the statement when
police questioned him on an unrelated automobile theft and escape. *See* N.T.
Jury Trial, 2/10/89, at 582-83.

[8] *See* N.T. Jury Trial, 2/10/89, at 538 (trial judge stating, "I'm not going to
limit your cross[-]examination unless you ask him specifically where [he is]
being housed."); *id.* at 537 (trial judge stating to counsel Eisner "cannot

benefits on his time served in prison." *Id.* at 537. *See id.* at 542-43 ("[Y]ou could also question him as to whether or not he got any deal[.]"). None of Eisner's prior convictions, which included burglary, theft, receiving stolen property, and conspiracy (all stemming from a 1975 arrest), disorderly conduct (1976), theft by unlawful taking and simple assault (1979), simple and aggravated assault (1979), theft and PIC (1981), burglary (1982), and receiving stolen property (1988), was disclosed by the prosecution at or before trial. On cross-examination, defense counsel did not explore Eisner's full criminal history or address any potential promise of favorable treatment in exchange for Eisner's cooperation in the case.[9]

---

answer where he is serving the time or that he is serving in Montgomery County. If he does, there will be a mistrial, that's clear, and I'm going to tell him that in advance[.]").

[9] In the middle of cross-examination, the trial judge clarified defense counsel's question regarding why Eisner decided to come forward, at such a late date, with the evidence about Williams' involvement in the shooting; Eisner replied that he thought he would get a break on his current charges if he cooperated. *Id.*, at 562 ("I'm hoping that my [j]udge, the [j]udge that I have to go in front of, would look favorably at the cooperation I give here); *id.* at 570-71 ("I feel the [j]udge will know that I've been cooperative. That's all."). However, Eisner acknowledged that no one had told him that he would get a break for testifying against Williams and that no one had told him that they would tell the judge in his case he had testified against Williams. *Id.* at 570.

In his current untimely PCRA petition,[10] filed on July 18, 2017,[11] Williams alleges for the first time facts regarding Eisner's criminal history and previously undisclosed pattern of cooperation with the prosecution in exchange for favorable treatment in his own open criminal matters. Williams also makes a related claim that the Commonwealth failed to disclose Eisner's complete criminal history and pattern of cooperation in violation of **Brady v. Maryland**, 373 U.S 83 (1963).[12] Williams alleges he first learned of these facts on July 13, 2017, when a family friend mailed him court transcripts dated

_____

[10] The parties do not dispute that Williams' petition is untimely under the PCRA. A PCRA petition, including a second or subsequent petition, must be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). Here, Williams' judgment of sentence became final on March 22, 1990, when the time expired for him to file a petition for allowance of appeal with the Pennsylvania Supreme Court. **See** Pa.R.A.P. 1113. Thus, he had until March 22, 1991, to file his petition. Because Williams' current petition was filed more than 26 years past that date, it is patently untimely. Thus, he has plead two exceptions to the timeliness requirement, **see** 42 Pa.C.S.A. §§ 9545(b)(1)(i) & (ii), in an attempt to overcome this jurisdictional hurdle.

[11] PCRA counsel filed amended and supplemental amended petitions raising claims of newly-discovered facts about witness Eisner and governmental interference.

[12] In **Brady**, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

May 21, 1982, and October 4, 1988.[13]  These transcripts—notes of testimony

from Eisner's unrelated criminal matters—disclosed that Eisner was an

informant for the Philadelphia Police Department and also revealed the fact

that Eisner had prior *crimen falsi* convictions that had not been disclosed at

Williams' trial.

In his PCRA petitions, Williams pled two exceptions to the PCRA's time-

bar:  the governmental interference exception[14] and the newly-discovered

facts exception.[15]  On May 14, 2019, the court issued Williams Pa.R.Crim.P.

907 notice of its intent to dismiss his PCRA petition without a further

_____

[13] Williams claims that on May 12, 2017, he asked his friend, Pamela Griffin, to go to the Montgomery County Courthouse to obtain the notes of testimony from two hearings related to Eisner's 1982 criminal case.  Those hearings, a sentencing hearing and probation violation hearing, occurred before Williams' trial, which began on February 6, 1989.  At the sentencing hearing, a prosecutor outlined Eisner's history of cooperation, including working with the members of the Major Crimes Unit in Philadelphia, and acknowledged that he had received a favorable plea as a result.  ***See*** Appellee's Brief, at 9, citing N.T. Eisner Sentencing Hearing, 5/21/82, at 3-4.

[14] ***See*** 42 Pa.C.S.A. § 9545(b)(1)(i) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:  [] the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]").

[15] ***See*** 42 Pa.C.S.A. § 9545(b)(1)(ii) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:  [] the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]").

proceeding, finding that "[t]he issues raised in [Williams'] PCRA petition . . . [were] without merit." Pa.R.Crim.P. 907 Notice, 5/14/19, at 1. Williams did not file a response. On June 18, 2019, the court dismissed Williams' petition. Williams filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He presents the following issues for our consideration:

(1) Was [Williams] entitled to a hearing on his claim that his PCRA filing below, within sixty (60) days of his discovery of evidence revealing [a] critical witness's extensive history of cooperation with law enforcement and *crimen falsi* convictions, after the Commonwealth affirmatively misrepresented that history, satisfied the jurisdictional requirements of 42 Pa.C.S.[A.] §[§] 9545(b)(1)(i) & (ii)?

(2) Was [Williams] entitled to a hearing on his ***Brady*** claim where, after a trial in which the only eyewitness to make an in-court identification admitted to his criminal involvement in the incident, [Williams] presented evidence suppressed by the Commonwealth, revealing a jailhouse informant's history of informing for law enforcement and *crimen falsi* convictions, after the Commonwealth at trial affirmatively misrepresented that history, in a case where the informant testified to [Williams'] confession to the offense?

(3) Was [Williams] entitled to a hearing on his [newly-discovered facts] claim where, after a trial in which the only eyewitness to make an in-court identification admitted to his criminal involvement in the incident, [Williams] presented evidence—formerly suppressed by the Commonwealth—after he diligently searched for such evidence, revealing a jailhouse informant's history of cooperation with law enforcement and *crimen falsi* convictions, after the Commonwealth at trial affirmatively misrepresented that history, in a case where the informant testified to [Williams'] confession to the offense?

Appellant's Brief, at 5.

The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Commonwealth v. Johnston***, 42 A.3d 1120, 1126 (Pa. Super. 2012). Moreover,

> [A] PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion.
>
>> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014) (citations omitted).

Instantly, the trial court concluded that Williams' "PCRA petition is untimely and [that] he has failed to demonstrate that any exception to the time-bar is applicable." Trial Court Opinion, 12/27/19, at 4. Specifically, the court acknowledged that, while Williams pled the newly-discovered facts and governmental interference exceptions to the PCRA's time-bar in his petition,

*id.* at 5, he "failed to file the instant petition within 60 days[16] of the date the claims could have first been presented." *Id.* Conversely, in its appellate brief, the Commonwealth concedes that Williams *is* entitled to an evidentiary hearing to "more fully explore the underlying material issues of fact as to the extent of Eisner's prior record and cooperation, the possession of which could arguably be imputed to the Commonwealth." Appellee's Brief, at 32.

With regard to the 60-day time limit within which Williams was required to present the claims regarding Eisner's criminal record or informant status, the PCRA court found that Williams was able to learn of these facts before July 13, 2017, where transcripts demonstrating these facts "[we]re of public record." Trial Court Opinion, 12/27/19, at 5. In coming to its decision, the trial court relied on case law supporting the presumption that "publicly available information cannot predicate a timeliness exception beyond the 60-day grace period defined in [s]ection 9545(b)(2)." *Id.* *See Commonwealth v. Burton*, 158 A.3d 618, 624-25 (Pa. 2017)[17] (compiling cases applying

---

[16] "Any petition invoking an exception provided in [section 9545(b)](1) shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). Section 9545(b)(2) was amended on October 24, 2018, effective in 60 days (Dec. 24, 2018), extending the time for filing from its original time limit of sixty days of the date the claim could have been presented, to one year. The amendment applies to claims arising on December 24, 2017, or thereafter. *See* Act 2018, Oct. 24, P.L. 894, No. 146, § 3. Since the current claim arose prior to December 2017, the sixty-day time limit in the prior version of section 9545(b)(2) applies herein.

[17] Notably, *Burton* whittles away at the public record presumption, holding that the presumption, for purposes of section 9545(b)(1)(ii), does not apply

public record presumption to PCRA's newly-discovered facts exception); *see also Commonwealth v. Shiloh*, 170 A.3d 553, 558 (Pa. Super. 2017) ("Generally, Pennsylvania courts presume that information of public record is not 'unknown' for purposes of the [s]ection 9545(b)(1)(ii) exception.") (citations omitted).

However, on October 1, 2020, nine months *after* the trial court filed its Rule 1925(a) opinion and more than one year following the denial of Williams' PCRA petition, our Supreme Court decided *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020). In *Small*, the Supreme Court "disavow[ed] the public record presumption [and overruled any] earlier decisions, including [its] own, [that] relied upon and applied that presumption to reject a petitioner's claim." *Id.* at 1286. The *Small* Court recognized that the public record presumption "can lead to results in tension with the statutory language [of section 9545(b)(1)(ii) . . . where] a PCRA petition can establish the facial requirements of the newly[-]discovered fact exception, but the court rejects

---

to *pro se* petitioners who are incarcerated. *Id.* at 638. The *Burton* Court logically reasoned that an unrepresented inmate has diminished access to such public records. *Id.* However, even under *Burton*, a *pro se* incarcerated petitioner is still required to plead and prove that the facts grounding his or her claim were unknown to him or her, that he or she could not have discovered those facts sooner with the exercise of due diligence, and his or her reasonable access to the public records. *Id.*

[a] claim merely due to the earlier public availability of the information[.]" *Id.* at 1284.[18]

Here, it is undisputed that Eisner's testimony was critical to the Commonwealth's case and provided a motive for the shooting that no other witness had offered. Eisner's credibility is especially relevant where two Commonwealth eyewitnesses repudiated or substantially diluted their out-of-court identifications at trial. Therefore, applying ***Small***, we conclude that the PCRA court erred in dismissing Williams' petition without a hearing based on the now-overruled public record presumption. Williams' petition raises material issues of fact and entitles him to an evidentiary hearing to determine whether he qualifies for an exception to the PCRA's time requirements pursuant to subsections 9545(b)(1)(i) and (ii). ***Bennett***, ***supra***; ***Burton***, ***supra***. *See* Pa.R.Crim.P. 908(A)(2) (PCRA judge "shall order a hearing . . . when the petition for post-conviction relief . . . raises material issues of fact.").

At the hearing, the court shall first determine whether the facts about Eisner's criminal history and pattern of involvement in Commonwealth

---

[18] ***Small*** discussed ***Commonwealth v. Bennett***, 930 A.2d 1264 (Pa. 2007), wherein the Supreme Court clarified that the newly-discovered facts exception "does *not* require the petitioner to allege and prove a claim of 'after-discovered evidence.' Rather, it simply requires [a] petitioner to allege and prove that there were 'facts' that were 'unknown' to him and that he exercised 'due diligence'" in uncovering those facts. *Id.* at 1270 (emphasis added). The ***Bennett*** Court reiterated that the plain language of section 9545(b)(1)(ii) "is not so narrow as to limit itself to only claims involving 'after-discovered evidence.'" 930 A.2d at 1272.

prosecutions were "unknown" to Williams.[19] *Small*, 238 A.3d at 1267. If the court concludes that the facts were unknown, then the court must examine the extent to which Williams exercised due diligence in uncovering the newly-discovered information. *Id.* With regard to the governmental interference exception, premised upon Williams' *Brady* claim, the PCRA court shall determine whether the prosecution interfered with Williams' ability to present his claim. If, in fact, the court concludes there was interference, then the court shall determine whether Williams was duly diligent in seeking out the facts on which that claim is based. *Commonwealth v. Smith*, 194 A.3d 126, 133 (Pa. Super. 2018) (acknowledging that *Brady* violation may satisfy governmental interference exception, but "the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by government officials, and that the information could not have been obtained earlier with the exercise of due diligence.") (citation omitted).[20]

---

[19] Again, applying the holding of *Small*, the PCRA court may not presume that the information cannot be deemed unknown based solely on the fact that it was publically disclosed or a matter of public record. *See Burton*, 158 A.3d 618, 638 at n.23 ("a . . . petitioner is still required to prove that the facts upon which his claim . . . is based were *unknown to him* and not ascertainable by the exercise of due diligence. **Our decision merely eliminates what we conclude is an unjustifiable presumption**.") (italics in original; emphasis added).

[20] We reiterate that section 9545(b)(1)(ii) is a jurisdictional threshold that does not require any merits analysis of an underlying after-discovered evidence claim. *See Bennett*, *supra*; *see also Commonwealth v. Brown*, 111 A.3d 171, 176-77 (Pa. Super. 2015). It is only *after* a petitioner establishes jurisdiction by pleading and proving the newly-discovered facts

- 13 -

Order vacated.  Case remanded for further proceedings consistent with this decision.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/25/21</u>

_____

exception that he or she can then present a substantive after-discovered evidence claim pursuant to section 9543(a)(2)(vi) of the PCRA.  **See** 42 Pa.C.S.A. § 9543(a)(2)(vi) (providing relief under PCRA if petitioner pleads and proves "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced").

- 14 -