J-S25043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
   :   PENNSYLVANIA
   :
v.   :
   :
   :
   :
SHAWN R. HILL   :
   :
Appellant   :   No. 551 EDA 2021

Appeal from the PCRA Order Entered February 19, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009017-2012

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:      **FILED AUGUST 31, 2021**


Shawn R. Hill (Hill) appeals *pro se* from the order entered by the Court of Common Pleas of Philadelphia County (PCRA court) dismissing as untimely his third petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

## I.

In 2012, Hill was charged with murder and several related offenses.  He then waived a jury trial in exchange for the Commonwealth's decision not to seek the death penalty.  The underlying facts adduced at trial have been previously summarized by this Court as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

Around midnight on July 5, 2011, Chastity Cannon dropped off her mother, Darlene Cannon, at her home, 191 Widener Street in North Philadelphia. Upon reaching her porch, Darlene Cannon overheard her neighbors, Marcella Ingrum of 187 Widener Street and Paula Wilkins of 189 Widener Street, complaining about Cannon's practice of pouring condiments and chocolate syrup on her porch stairs. Cannon and Ingrum began . . . arguing over Ingrum's comments. The argument prompted Cannon to call her daughter, Chastity Cannon, and explain the altercation to her. Chastity Cannon came back to Widener Street with her daughter and other females, both cousins and friends. Darlene Cannon identified Ingrum as the instigator of the altercation. Chastity Cannon and the other females began . . . arguing with Ingrum. Eventually, Sydney Hill, [Hill's] brother and Ingrum's son, joined the argument.

Meanwhile, Ingrum called her daughter Rorie Hill, summoning her and [Hill] to the incident. Rorie Hill and [Hill] arrived at 187 Widener Street. Upon exiting the car, Rorie Hill and [Hill] joined the argument. Sakima Santos, Chastity Cannon's fiancé, arrived on the scene and also joined the argument. Santos noticed [Hill] on the scene approximately five to ten minutes after he arrived.

* * *

Shortly thereafter, the argument resumed when two cars carrying a group of approximately eight males arrived on Widener Street. Jamel Newman, the decedent, was one of the males who arrived in the car. Most of the males exited the car and joined the argument. Santos was in the center of the crowd, attempting to calm down [Hill] and his family, explaining that no one wanted to fight. Pushing and shoving broke out, at which point Santos observed [Hill] pull a small, silver gun and fired two shots.

Upon hearing gun shots, Chastity Cannon turned to run toward Second Street but became caught up in the crowd. She noticed that her arm had been shot. She turned around and saw the [Petitioner] pointing a gun at her. [Hill] struck her with another bullet. Santos, having started to run, noticed his fiancé . . . lying in the street. When Santos turned back, he saw [Hill] pointing a gun at him. Santos asked [Hill] not to shoot and told him that "we have kids." Santos then watched as [Hill] shot him twice in the stomach. Santos counted to seven before standing up and carrying his fiancé to a police car at the end of Widener Street.

- 2 -

When Santos arrived at a police car located at the corner of Second Street and Widener Street he noticed the decedent, Jamel Newman, lying next to it.

On July 5, 2011, shortly after midnight, Patrick Duncan and his wife were driving South on Second Street. Stopping at a light, at Second Street and Nedro Avenue, Duncan observed two people running, one down the sidewalk and one down the street. Duncan hesitated to go through the light because he feared the two runners would cut in front of his car. As he began to accelerate, he noticed a person coming out of Widener Street on foot. That person made a left onto Second Street and as he did, he fell. Duncan also observed two different males standing next to the car on the Southeast corner of the street. The males stood with their backs to the car and were facing the person who turned off of Widener Street. Duncan then observed five or six gunshots. He saw one of the males standing by the car and holding a gun with two hands, and the other firing a gun. Duncan heard the person whom he saw fall moan as he drove past him on Second Street. On July 5, 2011, later in the morning, Duncan called Cheltenham Police who directed him to the Philadelphia Homicide Unit where Duncan then gave a statement consistent with his testimony.

Chastity Johnson, Chastity Cannon's daughter, was also present during the argument and the shooting. Johnson observed Newman at the scene of the argument. She also saw [Hill] pull out a gun and saw a spark ignite from it. Johnson saw Newman start to run. Johnson began running down the sidewalk, but soon moved to the street, which was less crowded. She watched Newman run in the street and observed [Hill] following him. Johnson saw another man with [Hill] who was carrying guns.

Officers Auty and Deacon, after quelling the argument on the 100 Block of Widener Street, had just reached the corner of Second and Nedro Streets when they heard gunfire. The [o]fficers pulled over and saw a great deal of smoke and the-decedent lying in the street. They pulled up to him and Officer Auty checked for signs of life, but found none. Sakima Santos approached Officer Auty, carrying Chastity Cannon and explaining that they had been shot. Officer Auty took Santos and Cannon to Einstein Hospital.

\* \* \*

In her statement to police, Marcella Ingrum [Hill's mother] named [Hill] as the shooter and identified him from a police photo array.

- 3 -

At trial, Ingrum testified she did not remember giving or signing her statement, claiming she was under the influence of alcohol and marijuana at the time she gave it. Detective Pitts testified that Ingrum did not appear to be under the influence of either substance at the time she gave her statement, which she delivered in a coherent and cooperative manner. In her statement to police, Rorie Hill said she witnessed the [Petitioner, her brother,] pull out a gun and fired a shot while arguing on Widener Street. At trial, Hill recanted her statement, claiming the police forced her to name [Hill]. Detective Harkins testified that he did not threaten Hill while taking her statement, nor did Hill indicate that she did not wish to speak with police.

**Ballistics evidence showed that three different guns were involved in the incident: one .380 and two nine millimeter firearms. None was forensically linked to [Hill].**

As a result of suffering two gunshot wounds to the stomach, Sakima Santos spent two and a half months in the hospital, ten of those days in a medically induced coma. Santos had his small intestines removed, and suffers from damage to his pancreas and liver. As a result of her three gunshot wounds, part of Chastity Cannon's lower intestine was removed, she suffered two cracked ribs, and the bone in her left arm from the shoulder to elbow was shattered. Her arm bone was replaced with a metal rod. A bullet also tore her left lung and injured her spleen, which was removed in surgery. Six to seven months after the incident, doctors removed a bullet from Cannon's back that could not have been removed during the initial procedures.

*Commonwealth v. Hill*, 1527 EDA 2014, at * 1-2 (Pa. Super. June 16, 2015) (unpublished memorandum decision) (emphasis added).

At the conclusion of trial, Hill was found guilty of first-degree murder, two counts of attempted murder, conspiracy to commit murder, two counts of aggravated assault, two counts of possession of a firearm by a prohibited person, possession of firearms not to be carried without a license, three counts of recklessly endangering another person, and possession of an instrument of

crime. He was sentenced to a term of life as to the murder count and several other consecutive and concurrent terms as to the other offenses.

Hill appealed and argued in part that his convictions must be overturned because the Commonwealth and investigating detectives withheld exculpatory ballistics evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *See id*. at *3. This Court found no merit in that issue because "no ballistics evidence offered at trial incriminated [Hill]" and even if bullets removed from the victims were not turned over to the police, it "would not have exculpated [Hill] or impeached the Commonwealth's evidence against him." *Id*. at *6. The judgment of sentence was affirmed. *See id*.; *see also Commonwealth v. Hill*, 128 A.3d 1205 (Pa. 2015) (denying allocatur).

In 2016, Hill filed his first PCRA petition asserting numerous claims of ineffective assistance of counsel and a *Brady* violation, again based on the Commonwealth's withholding of exculpatory ballistics evidence.[1] The petition was dismissed and Hill appealed. This Court affirmed the dismissal because Hill was attempting to "relitigate his failed *Brady* claim." *See Commonwealth v. Hill*, 3534 EDA 2016 (Pa. Super. November 3, 2017) (unpublished memorandum decision). Hill did not seek further review.

---

[1] Hill alleged that bullet fragments had been removed from the bodies of the two victims, but that those fragments were not submitted to the Philadelphia Police Department in violation of local hospital policy. It was inferred by Hill that the bullet fragments could have exonerated him if they had been tested for fingerprints.

In 2017, Hill filed a second PCRA petition, claiming once more that exculpatory ballistics evidence was withheld by the Commonwealth. This time, Hill cited evidence that officers assigned to his case (Detectives James Pitts, Ronald Dove and George Pirrone) had been found liable for fabricating evidence in civil suits filed by the defendants in unrelated criminal cases. Hill argued that similar misconduct occurred in his own case when ballistics data was withheld and witnesses were coerced into testifying against him.

The PCRA court denied Hill's second petition as untimely and meritless. Again, this Court affirmed the dismissal. *See Commonwealth v. Hill*, 202 A.3d 792 (Pa. Super. 2019) (unpublished memorandum decision). We found Hill's second petition to be untimely because the facts upon which Hill relied were already known to him and available with the exercise of due diligence when he filed his earlier PCRA petition. That is, Hill's claims arising from police corruption and his trial counsel's ineffectiveness were waived, previously litigated and untimely because he had an opportunity to raise those claims in his earlier proceedings. *See id*. at 800-01.

Hill claimed he did not discover the officers' corruption until after his first PCRA petition had already been filed. However, Hill had "demonstrated his awareness of the longstanding reports and court cases by making the very same allegations of investigatory corruption against Detectives Pirrone, Pitts, and Dove that he [made] in his second PCRA petition." *Id*. at 799.

- 6 -

Accordingly, none of that information would entitle Hill to PCRA relief. *See id*. Hill did not seek further review of the denial of his second PCRA petition.

Hill filed the present PCRA petition (his third) in 2020. The grounds of this third petition mirrored the claims he has previously raised on multiple occasions. He asserted that the detectives assigned to his murder case had withheld ballistics evidence and coerced witnesses to identify him as a perpetrator in the subject murder. Hill attempted to augment his earlier iterations of those claims by citing to news articles and civil judgments concerning the corruption of the above-mentioned detectives.

The PCRA court notified Hill of its intent to summarily dismiss his third petition, and Hill filed a response wherein he insisted that the merits of his petition should be heard pursuant to the holdings in *Commonwealth v. Williams*, 244 A.3d 1281 (Pa. Super. 2021), and *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020).

According to Hill, these decisions compelled the PCRA court to recognize his petition as timely filed because he had only recently learned of the factual basis of his claims; the Commonwealth had interfered with his ability to learn of those facts; and it could not be presumed he learned of those facts when they became a matter of public record. The PCRA court denied Hill's petition and filed a supplemental 1925(a) opinion, rejecting Hill's argument that his third PCRA petition was timely. *See* Supplemental 1925(a) Opinion, 2/25/2021, at 1.

In the single issue raised in his appellate brief, Hill argues that his PCRA petition was erroneously denied as untimely. **See** Appellant's Brief, at vi. Essentially, Hill argues that this Court should reconsider its prior affirmance as to the denial of his second PCRA petition because the earlier appeal was wrongly decided. **See id**. at 26-32.

## II.

Hill's central claim is that the PCRA court erred in finding that his third PCRA petition untimely filed. He cites **Small** and **Williams** for the proposition that the PCRA court erred in applying the "public records exception" to the PCRA's time-bar, resulting in its finding that Hill failed to exercise due diligence in raising his claims of official misconduct and government interference. However, the PCRA court did not err in denying Hill's third PCRA petition. For the same reasons outlined in Hill's prior appeals, his present claims are all untimely, previously litigated and ultimately meritless.[2]

## A.

First, Hill's claims cannot be heard on the merits because he has not satisfied an exception to the PCRA's jurisdictional time-bar. His judgment of

---

[2] The standard of review as to the denial of a PCRA petition is whether the PCRA court's ruling is supported by the evidence of record and is free of legal error. **See Commonwealth v. Ragan**, 923 A.2d 1169, 1170 (Pa. 2007). We defer to the PCRA court's factual findings as long as they are supported by evidence in the certified record. **See Commonwealth v. Brown**, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citing **Commonwealth v. Anderson**, 995 A.2d 1184, 1189 (Pa. Super. 2010)).

sentence became final in 2016. The petition now at issue was not filed until 2020.

All PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1). In this case, Hill's third PCRA petition is facially untimely because it was filed over four years after his judgment of sentence became final. Hill has invoked the newly-discovered fact and government interference exceptions to the PCRA's jurisdictional time-bar, which are outlined in subsection 9545(b)(1)(i) and (ii) of the PCRA. These exceptions have plainly not been met.

To satisfy the government interference exception, a petitioner must allege and prove that "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States." 42 Pa.C.S. § 9545(b)(i).

To satisfy the newly-discovered fact exception, a petitioner must establish that the facts forming the basis of his claim were unknown to him and could not have been obtained sooner by the exercise of due diligence. *See Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017); *see also Commonwealth v. Bennett*, 930 A.2d 1264, 1272 (Pa. 2007); *Commonwealth v. Brown*, 111 A.3d 171, 176-177 (Pa. Super. 2015).

A petitioner cannot satisfy this exception by relying on facts known to him at the time he filed a prior petition; nor can a petitioner satisfy the exception "by asserting prior counsel's ineffectiveness for failing to timely raise a claim." **Commonwealth v. Edmiston**, 65 A.3d 339, 349 (Pa. 2013); **see also Commonwealth v. Gamboa-Taylor**, 753 A.2d 780, 785 (Pa. 2000) (the "fact" that current counsel discovered prior PCRA counsel had failed to develop issue of trial counsel's ineffectiveness was not a newly-discovered fact for purposes of the PCRA's time limitations); **Commonwealth v. Pursell**, 749 A.2d 911, 915 (Pa. 2000) (holding that claims of PCRA counsel's ineffectiveness do not except a petitioner from the PCRA's one-year filing deadline). A petition invoking either of these exceptions must be filed within 60 days from the date the petitioner's claim could have first been presented. **See** 42 Pa.C.S. § 9545(b)(2).[3]

The claims in Hill's third PCRA petition rest solely on facts that he was aware of at the time he filed his previous petitions and appeals. He is attempting to show that the detectives involved with his case withheld ballistics evidence and coerced trial witnesses. As Hill implicitly concedes in his appellate brief, he merely seeks to relitigate his previously denied PCRA

---

[3] Section 9545(b)(2) was amended, effective December 24, 2018, to extend the 60-day limitation to a period of one year for claims arising on or after December 24, 2017. Because Hill's claims arose prior to that effective date, the 60-day window applies.

claims by relying on recent case law and additional information concerning the detectives' corruption in unrelated cases.

These authorities are of no avail because none of the underlying facts that Hill puts forward are "new," much less newly-discovered evidence as defined by subsection 9545(b)(1)(ii) of the PCRA. Hill also does not cite to any evidence that the Commonwealth interfered with his access to evidence pertaining to his case; he merely infers that it occurred because such interference happened during the prosecution of other criminal defendants.

The two cases Hill primarily relies on, *Small* and *Williams*, are inapplicable here. In *Small*, the Pennsylvania Supreme Court discussed the "public record presumption" which imputes knowledge of facts to a PCRA petitioner the moment those facts become part of the public record, regardless of whether the petitioner remained ignorant of them despite exercising due diligence. The presumption was abandoned in *Small*, mainly, because as applied to incarcerated *pro se* petitioners, it is inconsistent with the plain language of the PCRA's newly-discovered evidence exception to the jurisdictional time-bar. *See Small*, 238 A.3d at 1283-1286 (citing 42 Pa.C.S. § 9545(b)(1)(ii)).

Subsequently, in *Williams*, a petitioner sought post-conviction relief in a facially untimely serial petition, claiming that the Commonwealth had withheld evidence discrediting a crucial trial witness. Specifically, the petitioner learned that the Commonwealth had given favorable treatment to

one of its witnesses who had incriminated the petitioner. ***See Williams***, 244 A.3d at 1285. The petitioner argued that this satisfied the newly-discovered fact and government interference exceptions to the PCRA's jurisdictional time-bar. The petitioner raised these claims for the first time in a *pro se* petition filed within 60 days of discovering the new facts.

The petitioner's claim was initially denied as untimely because the facts he relied upon had long been available in publicly accessible transcripts. However, the ***Williams*** Court held that the PCRA court erred in denying the petitioner's claim. Relying on ***Small***, the Court held that the petitioner's status as an incarcerated prisoner, proceeding *pro se*, made it irrelevant that the information was generally available, as it was *not* immediately accessible to the petitioner. ***See id***.

***Small*** and ***Williams*** have no bearing on the present case because it is not a public records presumption that renders Hill's PCRA petition untimely. As has already been determined in his earlier appeals, Hill demonstrated his actual awareness of the purported corruption now at issue by raising the same exact claims on direct appeal and prior PCRA proceedings. Thus, because Hill cannot satisfy the newly-discovered evidence or government interference exceptions to the PCRA's jurisdictional time-bar, the PCRA court did not err in finding Hill's petition untimely.

**B.**

In addition to the time-bar, Hill's claims were also properly denied because they have been previously litigated, depriving the PCRA court of jurisdiction to consider the claims on the merits. *See* 42 Pa.C.S. § 9543(a)(3). "It is well-settled . . . that a PCRA petitioner cannot obtain review of claims that were previously litigated by presenting new theories of relief[.]" *Commonwealth v. Jones*, 811 A.2d 994, 1000 (Pa. 2002); *see also* 42 Pa.C.S. §§ 9543(a)(3), 9544.

An allegation of error has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue" or the alleged error "has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S. § 9544(a)(2) and (a)(3). The allegation of error is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal[,] or in a prior [PCRA] proceeding." *Id.* at § 9544(b).

In Hill's direct appeal, this Court evaluated his claim that exculpatory ballistics evidence was withheld by the Commonwealth. *See Commonwealth v. Hill*, 122 A.3d 1133, at *5. We rejected that claim because the subject ballistics material was completely irrelevant at Hill's trial:

> [A]s no ballistics evidence offered at trial incriminated [Hill], the missing evidence was not material, because no testing on the bullets removed from the victims could have exculpated [Hill] or impeached the Commonwealth's evidence against him. Finally, as the Commonwealth notes, [Hill] was convicted of conspiracy to commit first-degree murder, and therefore was responsible for the

shootings even if it was his co-conspirator's gun that fired the bullets recovered from the bodies of the victims.

*Id*. Further reviewed was denied by the Pennsylvania Supreme Court.

Later, on review of the denial of Hill's first and second PCRA petitions, this Court again found Hill's claims untimely and without merit because they concerned claims of witness coercion and *Brady* violations that had already been addressed in the direct appeal.

In his most recent PCRA petition, Hill once again raises the Commonwealth's purported withholding of ballistics evidence and coercion of witnesses as grounds for post-conviction relief. As we have previously held and as the PCRA court found, those claims have already been litigated, barring further consideration of the claims' merits. Thus, the dismissal of Hill's third PCRA petition must stand.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2021