J-S47003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALBERT DUNKOWSKI | : | |
| | : | |
| Appellant | : | No. 1507 EDA 2025 |

Appeal from the PCRA Order Entered May 14, 2025
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0000225-2020

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED MARCH 9, 2026**

Albert Dunkowski appeals *pro se* from the order of the Court of Common Pleas of Bucks County dismissing his petition filed pursuant to the Post-Conviction Relief Act ("PCRA")[1], without a hearing. Dunkowski argues that he is entitled to relief on his claims of sufficiency of the evidence and ineffective assistance of counsel. After careful review, we affirm the PCRA court's order dismissing his PCRA petition. However, for the first time on appeal, Dunkowski argues his sentence was illegal because the sentencing court failed to consider his recidivism risk reduction incentive ("RRRI")[2] eligibility. He is entitled to relief on this claim. Therefore, we affirm the order dismissing the PCRA petition and remand for the sentencing court to consider his RRRI eligibility.

---

[1] 42 Pa.C.S.A. §§ 9541–9546.

[2] 61 Pa.C.S.A. §§ 4501–4512.

This Court previously summarized the facts related to Dunkowski's underlying convictions. *See Commonwealth v. Dunkowski*, No. 1047 EDA 2022, 2023 WL 5129187 (Pa. Super. filed Aug. 10, 2023) (unpublished memorandum).

> In August 2019, police discovered Dunkowski and his wife inhabiting an automobile that was parked in the lot of the Woodbourn Train Station in Middletown Township. Upon arriving at the scene, officers observed Dunkowski lying face down in the grass. His wife was slumped over in the front passenger seat. Four children occupied the rear seat area of the vehicle. A cat was also living in the car. Officers noted that the vehicle was cluttered with trash, clothing, food, and debris. They also noticed the strong odor of bodily excretions, cigarettes, and rotting food. Due to the visibly poor physical condition of the children, the officers called Emergency Medical Services ("EMS"). EMS took protective custody of the children and transported them to the hospital.

> The trial court offered the following review of the condition of the various children that were in the parental care of Dunkowski and his wife:

>> At [the hospital], treating physicians made the following assessments: N.D., who suffered from cerebral palsy, was thirteen years old and weighed about ninety pounds. She was nonverbal, had a feeding tube, and started to develop bedsores from remaining in the same position for a significant amount of time. J.D. was four years old and weighed about forty pounds. She was still in diapers as she was not yet trained to go to the bathroom on her own and she needed extensive dental work—a root canal, a crown, and three fillings. Female L.D. was five years old and weighed about forty-eight pounds. She was also still in diapers and needed nine root canals, nine crowns, one filling, and four teeth pulled. She had never been to school. Male L.D. was nine years old and weighed about sixty pounds. He had bilateral clubfeet ... as well as undescended testicles .... Both required procedures—several to improve Male L.D.'s clubfeet and one to surgically descend his testicles.

Male L.D. also had such a severe, significant amount of dried, caked-on fecal matter on his diaper that when the doctor pulled it back, Male L.D.'s skin became raw and red. Dr. Torradas, the physician who treated the children, testified that, over the course of his lengthy career, he had never seen anything like what he saw on August 27, 2019.

That same day, [Dunkowski] and [his wife] spoke with Detective Brian Hyams (hereinafter "Detective Hyams") and told him that none of the four children found were enrolled in school. Detective Hyams asked if they had any additional children and they provided the names of three more minors in their care. They relayed that one child, R.[D]., was staying with a friend at the time, but neither [Dunkowski] nor [his wife] could provide any contact information to get in touch with her. Authorities eventually found R.[D]. and discovered that she missed almost the entire 2018-2019 school year and had an abscess in her tooth that rendered her unable to chew and required significant dental surgery. Fortunately, R.D did not require immediate, emergency medical treatment.

Shortly thereafter, Detective Hyams discovered that [Dunkowski] and [his wife] had an eighth minor child—S.D.—they did not mention when previously asked. After some investigation, Detective Hyams located S.D. and [Dunkowski] agreed to "turn her over" to authorities in a McDonald's parking lot. S.D. "appeared to be very thin, small, disheveled. Her hair was very short as if it wasn't growing, or falling out. Her eyes were puffy underneath. She was very, very quiet, almost like she was lethargic." Doctors later determined she weighed about forty-two pounds. S.D. was unable to walk because her legs were bent in a seated position. She also still needed diapers—at thirteen years old—because [Dunkowski] and [his wife] never taught her how to use the bathroom. Authorities immediately took protective custody of S.D. and transported her to [the hospital] with the other children.

*Id.* at **1-2 (quoting Trial Court Opinion, 6/23/22, at 2-4) (alterations in original).

Dunkowski and his wife Christine were both charged with six counts of endangering the welfare of children ("EWOC").[3] A consolidated jury trial commenced on October 4, 2021. On the third day of trial, Dunkowski and his wife failed to appear. The trial proceeded *in abstentia*. Dunkowski was convicted of three counts of EWOC. For each count, he was sentenced to three to seven years, consecutively, for an aggregate term of incarceration of 9 to 21 years.[4] He filed a timely post-sentence motion which was denied. Dunkowski filed a direct appeal, and this Court affirmed his judgment of sentence. *See Dunkowski*, 2023 WL 5129187, at *8.

Thereafter,

On July 29, 2024, [Dunkowski] filed his first PCRA Petition, Th[e PCRA c]ourt appointed Stuart Wilder, Esquire to represent [Dunkowski], but on September 4, 2024, Mr. Wilder filed a Motion to Allow [Dunkowski] to Represent Himself in his Petition for PCRA Relief. The Petition stated that [Dunkowski] wished to represent himself, and after a hearing on the matter where [Dunkowski] advised th[e PCRA c]ourt of the same, th[e c]ourt granted [Dunkowski's] Motion on December 18, 2024.

_____

[3] 18 Pa.C.S.A. § 4304.

[4] Dunkowski's wife, Christine Dunkowski, was his co-defendant at trial. She was convicted of the same charges and was sentenced to 8 to 21 years' incarceration. Her conviction was affirmed on direct appeal. *See Commonwealth v. Dunkowski*, No. 1990 EDA 2022, 2023 WL 4397323 (Pa. Super. filed July 7, 2023) (unpublished memorandum). Her *pro se* appeal of the denial of her first PCRA petition is pending at docket number 1220 EDA 2025.

On January 13, 2025, [Dunkowski] filed his *pro se* Amended Petition for Post Conviction Collateral Relief, wherein he challenged the sufficiency of the evidence presented at trial and alleged th[e sentencing c]ourt abused its discretion when imposing sentence and that his trial counsel was ineffective for: (1) not "moving for dismissal of the indictment" during said sentencing; (2) not interviewing his children in preparation for trial; and (3) not filing a successful direct appeal. On February 11, 2025, the Commonwealth filed its response to [Dunkowski's] Amended PCRA Petition. On February 24, 2025, th[e PCRA c]ourt issued a Notice of Intent to Dismiss Pursuant to Pa. R. Crim. P. 907 and stated that the claims were without merit and did not warrant an evidentiary hearing. On March 11, 2025, [Dunkowski] filed an Objection to Notice of Intent to Dismiss. On May 14, 2025, th[e PCRA c]ourt formally dismissed [Dunkowski's] *pro se* Amended PCRA Petition. On June 2, 2025, [Dunkowski] filed [a] Notice of Appeal to the Superior Court.

PCRA Court Opinion, 6/20/25, at 4-5.

Both Dunkowski and the PCRA court complied with Pennsylvania Rule of Appellate Procedure 1925. **See** Pa.R.A.P. 1925(a)-(b).

Dunkowski raises the following issues.

1. Did the Trial Court err in not correcting, at sentencing, the jury's verdict, once the [c]ourt became aware that there was no intent by [Dunkowski] to commit the offenses charged?

2. Was [Dunkowski's] trial counsel ineffective for not moving for a dismissal of the indictment and conviction due to the judge's comments at sentencing?

3. Was Trial Counsel ineffective for failing to interview [Dunkowski's] children at all, and thus was unprepared for trial without their version of events during their homeless period?

4. Was the term of confinement for Endangering the Welfare of Children illegal since the court failed to make a RRRI determination at the time of sentencing?

Appellant's Brief, at 4 (brackets omitted).

"The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." **Commonwealth v. Williams**, 244 A.3d 1281, 1286 (Pa. Super. 2021).

> The right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

**Id.** at 1287 (brackets and citation omitted).

In his first issue Dunkowski purports to raise a sufficiency of the evidence challenge. Specifically, he argues that the Commonwealth failed to establish that he intentionally neglected his children. **See** Appellant's Brief, at 14-19. However, it is well-settled that a claim challenging the sufficiency of the evidence is not cognizable under the PCRA. **See** 42 Pa.C.S.A. § 9543; **Commonwealth v. Mudge**, No. 919 WDA 2021, 2022 WL 2813608, at *5 (Pa. Super. filed July 19, 2022) (unpublished memorandum) ("challenge to sufficiency of evidence . . . is not cognizable under PCRA.").[5] Moreover, it is waived. **See** 42 Pa.C.S.A. § 9544(b) ("an issue is waived if the petitioner could

_____

[5] Unpublished decisions filed after May 1, 2019 may be relied upon for their persuasive value.

have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). Therefore, Dunkowski's first issue does not merit relief.

Next, Dunkowski claims that counsel was ineffective for failing to seek dismissal of his convictions because the evidence was insufficient. In support of his claim that counsel had reason to seek dismissal, he points to the sentencing court's comment at sentencing, "[w]e know that you did not set out to do this intentionally, at least I don't think you did[,]" as indicative of him lacking the requisite *mens rea*. **See** Appellant's Brief, at 21; N.T., 2/7/22, at 43. Additionally, he states appointed counsel was aware of email correspondence between the prosecutor and Chief Deputy Public Defender that Dunkowski claims indicates that they agreed to a mitigated sentence for him, which proves his lack of culpability. **See** Appellant's Brief, at 20-21. Based on the foregoing, he argues his counsel was ineffective for failing to file a motion to dismiss because the evidence was insufficient to prove his guilt. **See id.** at 19-22.

Although sufficiency of the evidence challenges are not cognizable under the PCRA, claims alleging ineffective assistance of counsel for failing to raise a sufficiency challenge are cognizable. **See Commonwealth v. Livingston**, No. 430 EDA 2021, 2022 WL 678933, at **5-6 (Pa. Super. filed Mar. 8, 2022) (unpublished memorandum) (addressing a PCRA claim that counsel was ineffective for failing to raise a sufficiency of the evidence claim).

"Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Commonwealth v. Ramirez-Contreras***, 320 A.3d 756, 760 (Pa. Super. 2024) (citation omitted). "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." ***Commonwealth v. Stultz***, 114 A.3d 865, 880 (Pa. Super. 2015) (citation omitted). "[I]f a claim fails under any required element, we may dismiss the claim on that basis." ***Commonwealth v. Kapellusch***, 323 A.3d 837, 847 (Pa. Super. 2024) (citation omitted).

As a preliminary matter, we observe that issues raised for the first time on appeal are waived. ***See*** Pa.R.A.P. 302(a). Additionally, "for purposes of appellate review, what is not in the certified record does not exist." ***Commonwealth v. Garvin***, 50 A.3d 694, 700 (Pa. Super. 2012) (citation omitted).

Here, Dunkowski concedes that he was provided the emails by his court appointed counsel on December 17, 2024, and that he filed his amended PCRA petition on January 13, 2025. ***See*** Reply Brief, at 7-8. However, he did not attach the emails to his PCRA petition, they are not otherwise in the certified record and are instead attached to his appellate brief. As such, we cannot

consider the emails.[6] Therefore, we limit our review to Dunkowski's claim that counsel was ineffective for failing to move for dismissal based on the sentencing court's comment at sentencing.

As the Commonwealth points out, the required *mens rea* for EWOC is "knowingly" not "intentionally." **See** 18 Pa.C.S.A. § 4304(a)(1) ("[a] parent . . . commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support."). "To be convicted under [Section 4304], the Commonwealth must prove a knowing violation of a duty of care." **Commonwealth v. Vela-Garrett**, 251 A.3d 811, 815 (Pa. Super. 2021) (internal quotation marks and citation omitted).

The PCRA court aptly summarized why the sentencing court's statement did not indicate a lack of sufficient evidence to sustain Dunkowski's EWOC convictions.

> When read in full context, it is clear th[e sentencing c]ourt was referring to the fact that [Dunkowski] did not have unwavering malicious intent to viciously harm his children. It does not refer to the fact that [Dunkowski] knowingly neglected his children by failing to meet their basic needs for things such as food, water, and hygiene. The evidence at trial proved beyond a reasonable doubt that [Dunkowski] knew his failure to provide such things would result in school aged children who were so weak they could barely function and who were so developmentally delayed they lacked basic skills such as the ability to use a toilet. The testimony and photographs admitted at trial proved beyond a reasonable doubt that [Dunkowski's] children were so obviously infirm that

---

[6] We briefly note that our cursory review of the email correspondence indicates that they occurred before trial and thus, were seemingly part of plea negotiations, not an agreement as to sentencing. Dunkowski did not enter a guilty plea and was convicted at trial.

even [Dunkowski] felt the need to hide the existence of his eighth child from authorities. Therefore, a review of the record makes clear there is no doubt as to [Dunkowski's] guilt nor is that guilt negated by [Dunkowski's] attempt to misconstrue a statement made by th[e sentencing c]ourt at sentencing.

PCRA Court Opinion, 6/20/25, at 7-8.

As explained by the PCRA court, the sentencing court's comment did not negate the sufficient evidence to sustain Dunkowski's EWOC convictions. Because Dunkowski's claim lacks merit, counsel cannot be found to be ineffective. *See Commonwealth v. Staton*, 632 Pa. 400, 427, 120 A.3d 277, 293 (Pa. 2015) (holding that counsel cannot be deemed ineffective for failing to pursue a meritless claim). Therefore, Dunkowski is not entitled to relief on his second claim.

In his third issue, Dunkowski claims his trial counsel was ineffective for failing to call his eldest daughter and son (who are twins), J.D. and M.D., to testify on his behalf.[7] *See* Appellant's Brief, at 22-24. He argues that counsel was aware of their existence and willingness to testify because they were seated outside the courtroom during trial and had spoken with defense counsel. *See id.* Further, he argues that he was prejudiced because J.D. and M.D. would have testified to their family's homelessness and thus their father's lack of intent to harm his children. *See id.* at 24. The Commonwealth argues that in his PCRA petition Dunkowski cited no authority and merely baldly

_____

[7] J.D. and M.D. were seventeen at the time of trial and were the only two children for which Dunkowski and his wife were not facing EWOC charges.

- 10 -

asserted that he was prejudiced by counsel's failure to call his two children as witnesses. ***See*** Appellee's Brief, at 31.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the ***Strickland*** test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. ***Commonwealth v. Johnson***, 600 Pa. 329, 966 A.2d 523, 536 (2009); ***Commonwealth v. Clark***, 599 Pa. 204, 961 A.2d 80, 90 (2008). To demonstrate ***Strickland*** prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Commonwealth v. Gibson***, 597 Pa. 402, 951 A.2d 1110, 1134 (2008). Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. ***Commonwealth v. Auker***, 545 Pa. 521, 681 A.2d 1305, 1319 (1996). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." ***Id.***

***Commonwealth v. Sneed***, 45 A.3d 1096, 1108-09 (Pa. 2012).

The PCRA court aptly summarized how Dunkowski failed to establish prejudice.

> [Dunkowski] attached two unsigned, unverified "emails" to his Amended PCRA Petition that are purportedly authored by his two (then minor) children, J.D. and M.D. In sum, the letters state that [Dunkowski] was merely trying to do his best amid serious financial troubles and that they feel the sentence imposed by th[e sentencing c]ourt is too severe. In his Amended PCRA Petition, [Dunkowski] argues that these letters prove Trial Counsel should have called J.D. and M.D. as witnesses. However, [Dunkowski] does [not] address the fact that neither J.D. nor M.D. were in the vehicle when the Victims were found and [Dunkowski] was arrested. He does not address the fact that they have no first-hand knowledge of the situation as they were both staying with

friends at the time (as they explain in their letters). In fact, [Dunkowski] even states that Trial Counsel decided not to call them as witnesses as they "would be a liability, and the D.A. would take them apart." Ironically, [Dunkowski] does not even realize that his own argument undermines his claim. It is clear that even if [Dunkowski's] claim had merit (which th[e PCRA c]ourt believes it does not), Trial Counsel had a reasonable basis to decline to present J.D. and M.D. as witnesses. Even if they were presented, the Commonwealth could have easily challenged and discredited their testimony with the plethora of photographs and statements from individuals who had firsthand knowledge of the incident as they were actually present at the scene of the crime.

. . . .

[Further], it is obvious that, not only would J.D. and M.D.'s testimony have not helped [Dunkowski], it would have most likely actually *hurt* his defense.

PCRA Court Opinion, 6/20/25, at 15-16.

We agree with the PCRA court's assessment. Dunkowski has failed to establish how he was prejudiced by trial counsel's failure to call J.D. and M.D. as witnesses where their testimony would not have been helpful to his defense. Moreover, as observed by the PCRA court, counsel had a reasonable basis to decline to present them. Therefore, Dunkowski's ineffective assistance of counsel claim fails.

Moving away from the PCRA petition, in his final issue, Dunkowski raises the sentencing court's failure to determine his RRRI eligibility for the first time. *See* Appellant's Brief, at 5, 25-29.

Under the RRRI Act, "[a]t the time of sentencing, the court shall make a determination whether the defendant is an eligible offender." 61 Pa.C.S.A. § 4505(a). A sentencing court's failure to assess a defendant's RRRI eligibility

- 12 -

implicates the legality of the sentence and may be raised for the first time in PCRA review. **See Commonwealth v. Finnecy**, 249 A.3d 903, 912 (Pa. 2021); **see also Commonwealth v. Armolt**, 294 A.3d 364, 376 (Pa. 2023) ("An appellate court may address, and even raise *sua sponte*, challenges to the legality of an appellant's sentence even if the issue [were] not preserved in the trial court.") (citation omitted).

The Commonwealth concedes that the sentencing court failed to consider Dunkowski's RRRI eligibility, which our review of the sentencing transcript confirms. **See** Appellee's Brief, at 16, 36-38. We commend the Commonwealth for its candor in this regard. As the Commonwealth correctly observes in its brief, although Dunkowski did not raise this issue before the PCRA court and this failure would ordinarily result in waiver under Pa.R.A.P. 302, issues pertaining to legality of sentence can never be waived. It is unfortunate that the PCRA court was not given the opportunity to address this issue while the case was still before the PCRA court.

Thus, we agree that a remand is necessary solely for the sentencing court to make the RRRI determination. Hence, in summary we affirm the PCRA court's order dismissing Dunkowski's PCRA petition and vacate and remand the judgment of sentence for the court's limited purpose of making a RRRI determination at sentencing.

Order affirmed. Judgment of sentence vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>3/9/2026</u>