J-S03023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LAVAR JONES | : | |
| | : | |
| Appellant | : | No. 322 EDA 2022 |

Appeal from the Order Entered January 14, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0505781-1998

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED JULY 5, 2023**

Lavar Jones[1] (Appellant) appeals from the January 14, 2022, order entered in the Philadelphia County Court of Common Pleas, dismissing his serial petition filed pursuant to the Post Conviction Relief Act (PCRA).[2]  He seeks relief from the 2001 judgment of sentence imposed following a jury conviction of second-degree murder, robbery, aggravated assault, possession of an instrument of crime (PIC), and criminal conspiracy[3] for the April 1998

_____

[1] Appellant's brief, and the court opinion filed below, spell Appellant's first name as "Levar."  However, his name appears on the caption for this appeal, the certified docket, and prior court proceedings as "Lavar."  Therefore, we will use the latter spelling.

[2] 42 Pa.C.S. §§ 9541-9546.

[3] **See** 18 Pa.C.S. §§ 2502(b), 3701(a)(1), 2702(a)(1), 907, & 903, respectively.

shooting death of Anita Kirby. Appellant contends the PCRA court erred in dismissing his petition because he properly invoked the newly-discovered fact exception to the timeliness requirement. *See* 42 Pa.C.S. § 9545(b)(1)(ii). For the reasons below, we affirm.

The PCRA court set forth the underlying factual history as follows:

> Appellant suggested to his friend, Donyel Jones, that they "take down" Frank & Nate's Variety Store, a small grocery store directly across the street from Appellant's house in the city and county of Philadelphia, Pennsylvania. Co-conspirator Jones responded that he "had been thinking the same thing." About a week later they carried out their plan.

> On April 23, 1998, they entered the store with guns drawn and the hoods of their sweatshirts tightly closed around their faces. They told a group of children to get out. The children included Vernicha Holt (age 12), her cousin Johnny (age 6), Jennifer Davis (age 14), and Christina Lewis (age 9). As the children ran out of the door, co-conspirator Donyel Jones approached the cashier, Anita Kirby and demanded money while Appellant stood in the back of the store.

> Ms. Kirby filled a plastic bag with money from the register, approximately $250. During this time, the store owner, Luther Frank Rucker, emerged from an ice box in the rear of the store. Appellant, who had known the elderly shopkeeper since childhood, pointed his gun at Mr. Rucker and ordered him to get down.

> Mr. Rucker recognized Appellant from a two-and-one-half inch opening around his eyes and his long, thin build and addressed Appellant by name saying, "Lavar." Appellant told Mr. Rucker to get down again. At that point, co-conspirator Jones spun and pointed his gun at Mr. Rucker, but Appellant told him not to shoot Mr. Rucker.

> Jones then turned back to Ms. Kirby and lowered his gun toward the counter. In that moment, Jones shot Ms. Kirby. She collapsed immediately and later died. After he shot Ms. Kirby, Jones collected the bag of money and fled the store with Appellant. As soon as they were out the door, Mr. Rucker exclaimed, "That

- 2 -

was Lavar!" Mr. Rucker's statement and the entire interaction was recorded on a store surveillance camera.

That night[,] Appellant was arrested based on the videotape of the crime and Mr. Rucker's identification. During an interview, Appellant attempted to place most of the blame on his coconspirator, Jones, but Appellant admitted that he initially suggested the plan and agreed to act as a lookout during the robbery, and he fled with Jones after the shooting. After Appellant's taped confession, police searched his home and recovered a blue Nautica baseball cap, a blue sleeveless vest, white long-sleeve sweatshirt, and a pair of Timberland boots, corroborating what Appellant said he was wearing and where he placed the clothing in his home.

PCRA Ct. Op., 7/13/22, at 1-2.

On November 21, 2000, at the conclusion of a jury trial, the jury found Appellant guilty of second-degree murder, robbery, aggravated assault, PIC, and criminal conspiracy. On January 25, 2001, the trial court sentenced Appellant to life imprisonment for the murder conviction. As for the remaining crimes, the court imposed the following sentences: (1) a concurrent term of ten years to 20 years for the robbery conviction; (2) a concurrent term of ten years to 20 years for the aggravated assault conviction; (3) a concurrent term of 30 months to 60 months for the PIC conviction; and (4) a term of ten to 20 years for the conspiracy conviction, to run consecutively to the robbery charge.

The details of the ensuing convoluted procedural history have been set forth in prior memoranda and are not relevant to the issue in this appeal. *See Commonwealth v. Jones*, 2719 EDA 2009 (Pa. Super. March 17, 2011) (unpub. memo.); *Commonwealth v. Jones*, No. 2944 EDA 2007 (Pa. Super.

filed May 13, 2009); **Commonwealth v. Jones**, 2624 EDA 2002 (Pa. Super. Oct. 29, 2003) (unpub. memo.); **see also** PCRA Ct. Op., 1/20/10; PCRA Ct. Op., 10/24/08; PCRA Ct. Op., 12/19/07.

We summarize that this Court affirmed Appellant's judgment on sentence on October 29, 2003. **See Jones**, 2624 EDA 2002 (Pa. Super. Oct. 29, 2003) (unpub. memo.). Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

More recently, Appellant filed a *pro se* petition for writ of *habeas corpus* on February 16, 2018, alleging the trial court erred in admitting testimony of certain witnesses who identified Appellant based on the sound of his voice and in instructing the jury regarding this evidence. **See** Appellant's Writ of *Habeas Corpus*/Memorandum of Law to Support Substantial Constitutional Claims, 2/16/18, at 13-14. He also claimed trial counsel was ineffective for failing to object to these instructions. **Id.**

The PCRA court treated Appellant's petition as a serial PCRA petition[4] and issued a Pa.R.Crim.P. 907(a) notice of intent to dismiss without a hearing,

---

[4] Appellant previously filed a PCRA petition in 2004, but ultimately was unsuccessful in receiving any relief. **See Commonwealth v. Jones**, 2719 EDA 2009 (Pa. Super. March 17, 2011) (unpub. memo.).

**See also Commonwealth v. Hromek**, 232 A.3d 881, 884 (Pa. Super. 2020) (stating that the PCRA generally "encompasses all other common law and statutory remedies . . . including *habeas corpus*. . . .") (italics added; citation omitted); **Commonwealth v. Taylor**, 65 A.3d 462, 466 (Pa. Super. 2013) (concluding "a defendant cannot escape the PCRA time-bar by titling
*(Footnote Continued Next Page)*

stating that it reviewed Appellant's claims and it lacked jurisdiction to review the matter because the petition was untimely, and his claims failed to satisfy any of the exceptions to the timeliness requirements of the PCRA. **See** Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907, 7/11/18, at 5. Appellant did not file a response to the court's Rule 907 notice. On December 7, 2018, the PCRA court dismissed the petition as untimely.

During this time, Appellant retained private counsel, Teri B. Himebaugh, Esquire,[5] who subsequently filed a document, titled "Petitioner's Amended Motion for Post Conviction Relief," on March 30, 2021. In this petition, Appellant raised a claim of "newly discovered evidence" in the form of a December 2, 2020, affidavit from one of the Commonwealth trial witnesses, Vernicha Holt, who was 12 years old at the time of his trial.[6] Appellant's Amended Motion for Post Conviction Relief, 3/30/21, at 8.

Appellant alleged that in April of 2020, Holt saw a photograph of Appellant that his cousin had posted on social media "with the caption, 'Free my cousin L[a]var Jones[.']" **See** Appellant's Amended Motion for Post

---

his petition or motion as a writ of *habeas corpus*") (footnote omitted); **Commonwealth v. Kutnyak**, 781 A.2d 1259, 1261 (Pa. Super. 2001) (the PCRA is "the exclusive vehicle for obtaining post-conviction collateral relief . . . regardless of the manner in which the petition is titled.") (citation omitted).

[5] Notably, Attorney Himebaugh entered their appearance in July of 2018.

[6] Appellant attached Holt's affidavit to his motion.

Conviction Relief at 11. Holt apparently "commented that it was a shock to see a picture of [Appellant] and that it [should not] have happened (*i.e.* he [should not] have been convicted)." *Id.* Appellant's cousin then asked Holt if she would be willing to speak with an investigator retained by Appellant's family, to which Holt agreed. Holt spoke with the investigator twice — once in May of 2020, and then in December of 2020, which is when her statement was taken. *Id.* at 8.

In her affidavit, Holt averred that when detectives first questioned her, she told them the truth — that she could not remember who the perpetrators were and what they were wearing. *See* Appellant's Amended Motion for Post Conviction Relief at 6. She said she lied and changed her story based on the detectives' mannerisms, which she believed were leading her to identify a certain individual. *Id.* Holt alleged they offered her money if the perpetrators were convicted. *Id.* Moreover, she stated that during Appellant's trial, she and two other witnesses, Jennifer Davis and Luther Frank Rucker, were coached by a detective and an assistant district attorney regarding their testimony. *Id.* at 7. She indicated that they again offered her money if she testified and Appellant was convicted, but she never received any money. *Id.*

Appellant argued that he "had no reason however to think that a key Commonwealth witness had been coached, threatened, coerced and bribed into testifying to facts which were not based on the witnesses' recollection." Appellant's Amended Motion for Post Conviction Relief at 10. Further, he

- 6 -

stated that his "counsel had no reason to suspect at the time of trial that the detectives and prosecutor . . . would intentionally coerce and fabricate evidence from these witnesses[, or] that a witness had been bribed to embellish her testimony in order to help achieve [Appellant]'s conviction." *Id.* at 13. Lastly, he alleged that this evidence was "highly relevant and material." *Id.* at 14. He stated that if he had known about it, he "could have filed a pre-trial motion to suppress the statements taken from [the] three eyewitnesses" on the basis that this tainted testimony was insufficiently reliable and violated his constitutional due process rights. *Id.* at 14-15.

The Commonwealth filed a response to Appellant's petition on May 27, 2021, asserting that Holt's trial testimony "was inconsequential, because she did not identify [Appellant] or his co-conspirator. Accordingly, even if believed, her affidavit claiming that she was 'coached' into testifying to 'what [detectives] wanted [her] to say' does not help [Appellant] because Ms. Holt did not identify [Appellant] at any time." Commonwealth's Letter Response to Appellant's PCRA Petition, 5/27/21, at 1 (emphasis omitted).

The PCRA court[7] treated Appellant's petition as another PCRA petition and issued a Rule 907 notice. The court specifically found:

> Holt's trial testimony described the crime but did not implicate [Appellant]. There was video evidence and also testimony by the owner of the store who recognized [Appellant]'s voice among

---

[7] The matter "was administratively reassigned" to a new PCRA judge. *See* PCRA Ct. Op., 7/13/22, at 3 n.3.

other things. [Holt's] allegations now that she was allegedly threatened to provide non-inculpatory testimony is not the sort of evidence that qualifies as after-discovered evidence.

Notice of Court's Intent to Dismiss Without Hearing Appellant's Petition for Post-Conviction Relief Pursuant to Pa.R.Crim.P. 907 (PCRA Ct.'s Rule 907 Notice), 12/15/21, at 2 (unpaginated). Appellant did not file a response to the court's Rule 907 notice. On January 14, 2022, the court dismissed Appellant's PCRA petition. This timely appeal followed.[8]

Appellant raises the following issue for our review:

Did the PCRA [c]ourt err when it found, without a hearing, that Appellant's newly/after discovered evidence claim relating to Vernicha Holt was not of a type to be considered ["]newly/after discovered["] evidence, lacked merit and/or otherwise failed to state a claim upon which PCRA relief could be granted?

Appellant's Brief at 2.[9]

Appellant first alleges that the PCRA court "did not advise" in its Rule 907 notice that "the petition was untimely." Appellant's Brief at 12 (emphasis

---

[8] Appellant complied with the PCRA court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court issued a Pa.R.A.P. 1925(a) opinion on July 13, 2022.

[9] In his question presented, Appellant appears to conflate the concepts of newly discovered evidence and after-discovered evidence. As will be discussed below, it is for the PCRA court to: (1) first determine whether his claim involving newly discovered evidence satisfies an exception to the PCRA time bar; and if so, (2) then shall reach the merits of the substantive claim concerning after-discovered evidence. *See Commonwealth v. Williams*, 244 A.3d 1281, 1289 n.20 (Pa. Super. 2021).

- 8 -

omitted). He states that the court's "basis for dismissing the petition was based solely on ostensible lack of merit." *Id.*

Additionally, Appellant claims the PCRA court erred by dismissing his petition because Holt's 2020 statement, in which Holt averred she was recanting her 2000 trial testimony because it had purportedly been coerced, falls under the newly-discovered fact exception to the PCRA time-bar. *See* Appellant's Brief at 9-12, 13. Appellant states that his case is factually akin to *Commonwealth v. Medina*, 92 A.3d 1210 (Pa. Super. 2014) (*en banc*), where a panel of this Court concluded that a witness's recantation of her trial testimony and disclosure of detectives threatening her into testifying constituted a newly-discovered fact. *See* Appellant's Brief at 14.

Appellant repeats most of his argument in his PCRA petition, arguing that he has been diligently seeking relief since his judgment of sentence, and he "had no reason however to think that a key Commonwealth witness had been coached, threatened, coerced and bribed into testifying to facts which were not based on the witnesses' recollection." Appellant's Brief at 18. Appellant further alleges that counsel would have no reason to suspect fabrication and cross-examine the witnesses and detectives about this alleged misconduct. *Id.* at 23. Appellant maintains the evidence at issue can be used "to impeach the credibility of the Commonwealth witnesses[ ] and the integrity of the entire police investigation[.]" *Id.* at 20. He also contends Holt's statement demonstrates she fabricated her testimony, and fellow witness,

Davis, "lied when she testified that she recognized [Appellant]'s voice." *Id.* at 21. Appellant alleges that another Commonwealth witness, Rucker, was also coached and provided fabricated testimony. *Id.* Appellant asserts that as such, the evidence at issue "is not cumulative of any evidence presented by the defense" at trial. *Id.* at 22. Lastly, he again states counsel "could have filed a pre-trial motion to suppress the statements taken from [the] three eyewitnesses" on the basis that this tainted testimony was insufficiently reliable and violated his constitutional due process rights. *Id.* at 24-25.

In reviewing an order denying or dismissing a PCRA petition, our standard of review "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citation omitted).

> Pursuant to Rule 907, a PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings.

*Commonwealth v. Brown*, 161 A.3d 960, 964 (Pa. Super. 2017) (citations omitted).

Here, while the PCRA court did not specifically find that Appellant's petition was untimely filed in its Rule 907 notice, it did make such a determination in its Rule 1925(a) opinion. *See* PCRA Ct. Op., 7/13/22, at 4

- 10 -

(stating "Appellant's current PCRA petition is untimely filed. . . .").[10]

Therefore, before reaching the merits of Appellant's claim, we must determine

whether this appeal is properly before us.

> The timeliness of a PCRA petition is a jurisdictional requisite. [T]he PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of the petition. In other words, Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. The PCRA requires a petition, including a second or subsequent petition, to be filed within one year of the date the underlying judgment becomes final. A judgment of sentence is final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review.

*Commonwealth v. Ballance*, 203 A.3d 1027, 1031 (Pa. Super. 2019)

(citations, quotation marks, & emphasis omitted); *see also* 42 Pa.C.S. §

9545(b)(1), (3).

As mentioned above, on October 29, 2003, a panel of this Court affirmed

Appellant's judgment of sentence. Therefore, Appellant's judgment of

sentence became final on Friday, November 28, 2003, when the 30-day period

for filing a petition for allowance of appeal expired. *See* 42 Pa.C.S. §

9545(b)(3) (judgment is final at conclusion of direct review, or at the

expiration of time for seeking review); Pa.R.A.P. 1113(a) (petition for

---

[10] Moreover, we note that one can reasonably infer the PCRA court deemed Appellant's 2021 petition as untimely filed when it issued the Rule 907 notice because it had previously concluded that Appellant's 2018 petition was untimely filed.

allowance of appeal must be filed within 30 days of entry of Superior Court decision).  Appellant had one year from that date — or until November 29, 2004[11] — to file a timely PCRA petition.  **See** 42 Pa.C.S. § 9545(b)(1) (PCRA petition must be filed within one year of date judgment of sentence is final).  He filed the present petition on March 30, 2021 — approximately 16 years later — and as such, it is facially untimely.

The PCRA, however, allows a defendant to file a petition after this period when they plead and prove the following relevant timeliness exception:

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

42 Pa.C.S. § 9545(b)(1)(ii).  Furthermore, a petition pleading any of the above exceptions must be filed within one year of the date the claim could have been presented.[12]  42 Pa.C.S. § 9545(b)(2).  It is the petitioner's "burden to allege

_____

[11] The one year mark, November 28, 2004, fell on a Sunday; therefore, Appellant had until Monday, November 29th to file a timely notice of appeal.  **See** 1 Pa.C.S. § 1908 (for purposes of computing time, when last day of period falls on a weekend or legal holiday, such day is omitted from computation).

[12] Until 2018, Section 9545(b)(2) required a petitioner to invoke a timeliness exception within 60 days.  However, in 2018, the time period was extended to one year. 42 Pa.C.S. § 9545(b)(2); Act of October 24, 2018, P.L. 894, No. 146, § 2.  The Act amending Section 9545(b)(2) provides that the one-year period applies only to timeliness exception claims arising on or after December 24, 2017. Act of October 24, 2018, P.L. 894, No. 146, § 3.  Appellant alleges his claim arose in 2020, when Holt made her statement.  Therefore, the amendment governs the present matter.

and prove that one of the timeliness exceptions applies." ***Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1268 (Pa. 2008).

"Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced." ***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted). Additionally, the Pennsylvania Supreme Court previously explained that "[t]he focus of the [Section 9545(b)(1)(ii)] exception is on [the] newly discovered facts, not on a newly discovered or newly willing source for previously known facts." ***Commonwealth v. Marshall***, 947 A.2d 714, 720 (Pa. 2008) (citation, quotation marks, & emphasis omitted).

Here, Appellant attempts to satisfy the newly-discovered fact exception by relying on Holt's 2020 affidavit. In denying his claim, the PCRA court found the following:

> Appellant attaches an affidavit from Holt recanting her testimony at trial, saying that she told the truth when she was first questioned by the detectives and that her testimony at trial was coerced. . . . She first spoke to the private investigator in May 2020, and she gave a verified statement on December 2, 2020. The PCRA petition was filed on March 30, 2021, thereby filing the petition within one year of learning of the "new evidence."
>
> In her affidavit, Holt states that during the interview with detectives, a detective said that one of the guys had a gray and blue hoodie and was six feet tall. Holt claims that when her aunt stepped out of the interview room, Detectives threatened to lock her up and take her away from her family if she didn't say what

- 13 -

they wanted her to. When asked if she was offered anything she claims, "basically money." Holt also claims that other Commonwealth witnesses during the trial were coached, although there are no statements from those witnesses.

The information in Holt's affidavit fails to invoke the new fact exception to the timeliness requirements of the PCRA. Holt did not identify Appellant or his co-conspirator, Jones, in her statement to detectives or at trial. Holt was cross-examined about the inconsistencies in her testimony and statement to detectives at trial. **Holt states that she lied but does not say what she lied about.** It is unclear therefore what the new fact is or how this new fact would have changed the outcome of the trial had it been known at the time. **Holt's affidavit contains nothing new as she never identified Appellant, and her overall testimony was inconsequential.**

Appellant also claims Holt's affidavit would undermine the statements and testimony of the other Commonwealth witnesses; however, this claim is without merit as there are no affidavits from those witnesses or any indication that their statements were untruthful. Thus, Appellant has failed to invoke an exception to the timeliness requirements of the PCRA.

PCRA Ct. Op., 7/13/22, at 5-6 (emphases added).

The Pennsylvania Supreme Court previously noted the following regarding recantation testimony:

We acknowledge that, as a general matter, recantation evidence is notoriously unreliable, particularly where the witness claims to have committed perjury. This Court has also emphasized, however, that, even as to recantations that might otherwise appear dubious, the PCRA court must, in the first instance, assess the credibility and significance of the recantation in light of the evidence as a whole.

*Commonwealth v. D'Amato*, 856 A.2d 806, 825 (Pa. 2004) (citations and quotation marks omitted).

- 14 -

Notably, the Commonwealth acknowledges that Holt's statement "may be sufficient" to meet the newly-discovered fact exception to the time bar. *See* Commonwealth's Brief at 8. Moreover, the Commonwealth stated:

Holt testified at [Appellant]'s trial but was not able to identify him. She did testify about the events of the robbery and the description of the robbers' clothes and heights. If the factual assertions [Appellant] presented in his petition regarding his discovery of the witness's recantation are true, it appears that he may have met the newly-discovered-facts exception to the PCRA's one-year filing deadline.

*Id.* at 10 (record citation omitted).

In *Medina*, which Appellant relies on, a panel of this Court found that two child key witness's recantation testimony met the newly-discovered fact exception where a detective had threatened one of the Commonwealth's witnesses, causing one child witness to lie. *See Medina*, 92 A.3d at 1216-17. The Court also explained that the defendant had no way of discovering this evidence through the exercise of due diligence, stating:

[The child witness] testified consistently and unequivocally at trial that [the defendant] wielded a knife shortly before the murder and stated that he was going to kill someone. As such, it was highly unlikely that defense counsel, without any supporting factual basis, could have compelled [the witness] to change his testimony during cross-examination, by engaging in a fishing expedition as to why [the witness] was lying. Therefore, we conclude that [the defendant] could not have discovered the source of [the witness's] recantation, or the recantation itself, through the exercise of due diligence[.]

*Id.* at 1217-18 (citation omitted).

At trial, and as summarized by the PCRA court, Holt testified to the following:

- 15 -

[S]he was inside the store when she witnessed two men enter the store each with a gun. One, she stated had a gray hoodie on. She did not pay attention to the other. When she left the store she saw a man at the corner and heard [the] man yelling "grab her; grab her[."] She turned the corner and r[a]n, then heard a gunshot. She testified she was unable to tell detectives anything else about the two men involved in the robbery and subsequent murder.

PCRA Ct.'s Rule 907 Notice at 1-2 (unpaginated; some capitalization omitted).

In Holt's December 2020 affidavit, she recanted her trial testimony and, for the first time, stated that the detectives and assistant district attorney coached and threatened her as well as offered her money if the defendants were convicted. We discern that there is nothing in the record to suggest that Appellant could have learned of Holt's recantation statement before December of 2020. Accordingly, despite the PCRA court's finding to the contrary, it appears that Appellant may have satisfied the PCRA's timeliness exception for newly discovered facts under 42 Pa.C.S. § 9545(b)(1)(ii).[13], [14]

Nevertheless, our review does not end there. "Once jurisdiction has been properly invoked (by establishing either that the petition was filed within

---

[13] To the extent that Appellant raises claims that two other witnesses, Davis and Rucker, were coached and fabricated their testimony, we reject his assertion. Appellant failed to include these affidavits or statements in his petition; therefore, we have nothing to review.

[14] We reiterate that the newly-discovered evidence exception is a jurisdictional threshold and does not require a merits analysis. *See Williams*, 244 A.3d at 1289 n.20. "Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts." *Brown*, 111 A.3d at 176.

one year of the date judgment became final or by establishing one of the three exceptions to the PCRA's time-bar), the relevant inquiry becomes whether the claim is cognizable under the PCRA." ***Commonwealth v. Cox***, 146 A.3d 221, 227-28 (Pa. 2016). Subsection 9543(a)(2)

> delineates seven classes of allegations that are eligible for relief under the PCRA. Of relevance here is the "after-discovered evidence" provision, which states that a claim alleging "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced" is cognizable under the PCRA. To establish such a claim, a petitioner must prove that "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict."

***Cox***, 146 A.3d at 228 (citations omitted). "In making that determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." ***Commonwealth v. Padillas***, 997 A.2d 356, 365 (Pa. Super. 2010).

Here, the PCRA court provided an alternate conclusion, finding that Appellant's petition was without merit:

> Appellant would not be able to demonstrate that this affidavit would likely result in a different verdict. At trial, the Commonwealth presented Appellant's detailed and corroborated confession, eyewitness identification testimony from Mr. Rucker, and voice identification testimony from witness Jennifer Davis, one of the children from the neighborhood that Appellant ordered out of the store. Child witness Davis was recalled by the Commonwealth because she testified during her initial cross-examination that she recognized the voice of one of the men in

the store, which contradicted her statement to detectives. The Commonwealth recalled Ms. Davis the following day where she explained that she did not identify Appellant's voice because she did not pay attention to it and did not think it was Appellant in the store. Ms. Davis testified that when she viewed the video tape the day prior to testifying, she was able to recognize Appellant's voice, but did not tell anyone immediately. She testified that the first person she told was her mother as they were both seated in the detective's car just after she testified the day prior. Ms. Davis testified that she was scared to testify in the first place, so she "wasn't really trying to say anything[."]

At trial, Holt testified that she could not identify who the two robbers were other than that one of the men was dark-skinned and that he had a gray hoodie on. She did not pay attention to the other man. Holt was cross-examined regarding the discrepancies in her first statement to detectives, which she now claims was true, and her trial testimony, which she now claims was coerced. Holt's testimony was not crucial to the case [—] she did not identify the robbers, nor did she see the shooting. It is very unlikely that this recantation would likely change the outcome of the verdict. Thus, this claim lacks merit.

PCRA Ct. Op., 7/13/22, at 7.

We agree with the PCRA court's conclusion that Holt's affidavit does not warrant any substantive relief because this evidence would not have resulted in a different verdict where Holt never identified Appellant in her statement or at trial. Holt merely testified about the robbery and the description of the perpetrators' clothing and heights. At Appellant's trial, the Commonwealth presented identification testimony from Davis and Rucker but also, and importantly, video surveillance footage of the entire incident as well as Appellant's taped confession, in which he admitted that he suggested the robbery plan, agreed to act as lookout, and fled with his companion following the shooting. *See* PCRA Ct. Op., 7/13/22, at 2. It is unlikely that Holt's

affidavit recanting her testimony concerning the perpetrators' clothing and heights would have affected the outcome of the trial in light of the fact that the jury observed the video footage depicting the robbery and offenders. Therefore, even if Appellant overcame the PCRA's timeliness requirement, his after-discovered evidence claim would not warrant any relief. For these reasons, we affirm the PCRA court's order dismissing Appellant's petition.[15]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/5/2023

---

[15] It is well-settled that we may affirm on any basis. **See Commonwealth v. Clouser**, 998 A.2d 656, 661 n.3 (Pa. Super. 2010).