J-S27012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:            PENNSYLVANIA
:
v.                         :
:
:
ANTHONY THOMAS GREEN         :
:
Appellant         :   No. 1719 EDA 2024

Appeal from the Order Entered May 21, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0003256-2017

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:            PENNSYLVANIA
:
v.                         :
:
:
ANTHONY THOMAS GREEN         :
:
Appellant         :   No. 1721 EDA 2024

Appeal from the Order Entered May 21, 2024
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0003259-2017

BEFORE:    STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:         **FILED DECEMBER 11, 2025**

Appellant, Anthony Thomas Green, appeals *pro se* from the order of the Court of Common Pleas of Montgomery County dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. Upon review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

The facts of the underlying cases are not in dispute. On April 3, 2017, Detective David Crawford of the Norristown Police Department was on patrol operating an unmarked police vehicle. N.T. Trial, 3/27/18, at 13-14, 16. He observed Mary Bannon, an individual known to him from prior arrests for engaging in prostitution and drug offenses. *Id.* at 14-15.

Detective Crawford watched Bannon converse with several individuals in different vehicles. *Id.* at 17-20. Based on his training and experience, as well as his past contacts with Bannon, Detective Crawford believed Bannon was trying to buy drugs or sell herself. *Id.* at 20. At that point, he decided to approach the last vehicle Bannon had contact with, a white truck. Before he could do so, Bannon walked into the street and entered a blue van that had stopped in front of her. *Id.* at 21. Detective Crawford now focused on the blue van, which drove down the street about 50 to 60 yards and parked. *Id.* Detective Crawford now believed he was watching a drug transaction. *Id.* at 22. He ran the van's registration and learned that Appellant was the registered owner. *Id.* at 23.

Detective Crawford pulled his vehicle behind the van and approached the driver's side. *Id.* at 25. Due to heavy window tinting, Detective Crawford was unable to see clearly inside the vehicle, but he still could see the driver's hands moving. *Id.* at 26-27. Believing that a drug transaction was occurring, Detective Crawford opened the driver's side door for officer safety, identified himself, and asked Appellant, the driver, to exit the vehicle. *Id.* at 27.

Bannon was in the passenger seat, and an unidentified male was in the back seat.[1] *Id.* at 28.

Appellant initially was cooperative but became increasingly aggressive and hostile. *Id.* at 28. Officer Joshua Keenan, an officer who arrived at the scene as backup, repeatedly told him to calm down and keep his hands on the rear of the vehicle. *Id.* at 91. Based on Appellant's behavior, Officer Keenan was concerned that Appellant was going to engage him or other officers in physical contact or run. Therefore, Appellant was handcuffed. *Id.*

Before putting Appellant into a patrol vehicle, Officer Keenan patted him down in accordance with Norristown's policy. *Id.* at 92. Officer Keenan recovered 168 red paper bags of heroin, 14 white paper bags of heroin, 39 yellow plastic bags of methamphetamine, and $302 of U.S. currency from Appellant's person. *Id.* at 98; *see also* Commonwealth's Exhibit 16. As a result, Appellant was arrested, and his vehicle was towed.

Detective Crawford obtained a search warrant for Appellant's van, and a search revealed a loaded 40-caliber handgun underneath the driver's seat. *Id.* at 35. He also recovered a clear bag with four pills in the console. *Id.* In Detective Crawford's opinion, and based on the design of the driver's seat, the only person who could have placed the firearm at that angle was the driver. *Id.* at 38. Appellant was charged with person not to possess a firearm, carrying a firearm without a license, possession with intent to deliver ("PWI"),

_____

[1] This individual was never identified.

and related crimes (CP-46-CR-3259-2017). Appellant posted bail and was released.

On April 8, 2017, Officer Keenan was on patrol near the Americas Best Hotel, a known high-crime, high-drug area in Norristown. *Id.* at 113. A confidential informant told Officer Keenan that he had just purchased drugs from a male known as "Ant." *Id.* at 114. Based on this information, Officer Keenan began surveillance in the area for a blue Subaru station wagon. *Id.* Officer Keenan located the vehicle, which was registered to Appellant, and initiated a traffic stop. *Id.* at 115-16. As soon as Officer Keenan approached, Appellant was argumentative and questioned the stop. *Id.* at 116-17. Appellant kept moving his hands toward the center console despite Officer Keenan's commands to keep his hands visible. *Id.* at 117.

Appellant ultimately complied and Officer Keenan asked him to exit the vehicle, which he did. *Id.* While Officer Keenan conducted a pat down for officer safety, Appellant continued to move and repeatedly turned away from Officer Keenan. *Id.* at 118. Officer Keenan felt the outline of a Ziploc bag with a rocklike object inside. *Id.* at 119. He removed the object, which was consistent with crack cocaine, and placed Appellant under arrest. *Id.* Appellant's vehicle was towed, and a search warrant for it was obtained. *Id.* at 119. When the search was executed, several cell phones were ringing constantly. *Id.* at 120. Inside the fuse box underneath the dashboard and underneath the driver's seat, officers recovered 117 black plastic bags of cocaine, 14 plastic bags of cocaine, 11 yellow plastic bags of

methamphetamine, 34 green paper bags of fentanyl and heroin, one red paper bag of heroin, and one plastic bag of unidentified white material. *Id.* at 120; *see also* Commonwealth's Exhibit 21. Appellant was charged with three counts of PWI and related crimes (CP-46-CR-3256-2017).

On May 10, 2017, a combined preliminary hearing for both cases was held, and all charges were held for court. Although the Commonwealth never filed a formal motion to consolidate, the cases were consolidated by court order on July 31, 2017. Appellant filed omnibus pretrial motions on both cases, and the trial court conducted a combined hearing. Appellant's motions were denied on December 12, 2017. Trial was scheduled for March 29, 2018, and subsequently rescheduled to March 26, 2018. Thereafter, the Commonwealth gave notice of its intent to admit lab results as to the quantities and type of narcotics seized. Appellant objected and filed a demand for live testimony.

On the scheduled date of trial, Appellant waived his right to a jury. He completed a written colloquy, and the trial court conducted an oral colloquy. *See* Waiver of Jury Trial, 3/27/18; *see also* N.T. Trial, 3/27/18, at 6-12. After presentation of evidence relating to the first case (No. 3259-2017), trial counsel objected to the consolidation of the two cases and made an oral motion to sever. N.T. Trial, 3/27/18, at 108. Trial counsel acknowledged that he agreed to proceed in one trial for both cases. *Id.* However, he argued that the cases should not have been consolidated because the evidence for the second case was not admissible in the first case. *Id.* The court denied

the motion and determined that consolidation would not prejudice Appellant because they were not before a jury, and the court could separate the evidence and consider the two events separately. *Id.* at 109.

The trial court found Appellant guilty on all counts and imposed an aggregate sentence of 10 ½ to 40 years of incarceration. This Court affirmed Appellant's judgment of sentence. *See Commonwealth v. Green*, 2020 WL 1182267 (Pa. Super. filed March 11, 2020) (unpublished memorandum). On October 6, 2020, our Supreme Court denied allowance of appeal. *See Commonwealth v. Green*, 240 A.3d 99 (Table) (Pa. 2020).

On March 16, 2021, Appellant filed a *pro se* PCRA petition. The court appointed Joshua M. Rudolph, Esquire, as PCRA counsel. Attorney Rudolph filed a motion to withdraw with an accompanying *Turner*/*Finley*[2] no-merit letter. The PCRA court denied Attorney Rudolph's motion and directed him to confer with Appellant to determine whether to file an amended petition and request for an evidentiary hearing. *See* Order 3/8/22. The court also directed Attorney Rudolph to specifically address the 13 claims raised in Appellant's *pro se* PCRA petition and explain why each is without merit. *Id.*

On April 7, 2022, Attorney Rudolph filed a motion to withdraw with an amended *Turner*/*Finley* no-merit letter. In addition to explaining why Appellant's claims were without merit, Attorney Rudolph stated that he had not communicated with Appellant. Appellant filed *pro se* correspondence

_____

[2] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

confirming that he had not spoken with Attorney Rudolph and attached copies of letters of his attempts to speak with Attorney Rudolph. The PCRA court denied Attorney Rudolph's motion to withdraw and scheduled an evidentiary hearing on three issues:

1. Whether trial counsel erroneously stipulated to the accuracy, reliability and admissibility of laboratory reports purporting to identify items alleged to have been seized from the possession and/or control of [Appellant] as illicit controlled substances.

2. Whether direct appeal counsel erred in failing to raise on direct appeal . . . a meritorious challenge preserved by trial counsel, challenging the improper consolidation of the trial proceedings on the charges at docket number CP-46-3259-2017 with CP-46-3256-2017.

3. Whether direct appeal counsel erred in failing to raise on direct appeal . . . a meritorious challenge to the legality of [Appellant's] sentence on the charge of prohibited possession of a firearm, graded as a felony of the first degree pursuant to 18 Pa.C.S.A. § 6105(a)(1.1)(i), where the prosecution failed to provide sufficient evidence to impose the enhanced sentence as required by ***Apprendi v. New Jersey***, 530 U.S. 466 (2000) and its progeny.[5]

> [5] This issue was raised in appellate counsel's statement of matters complained of on appeal and addressed by the trial court in the supplemental opinion dated December 26, 2018, but was not presented for review at the Superior Court.

Order, 5/16/22, at 2-3 (our pagination).

Prior to the evidentiary hearing, Appellant filed a *pro se* motion to postpone the hearing and requested appointment of new PCRA counsel because Appellant had filed a formal complaint against Attorney Rudolph with the disciplinary board. ***See*** Motion, 6/16/22. The evidentiary hearing was

rescheduled twice to October 18, 2022. On the eve of the hearing, Attorney Rudolph filed a motion to withdraw, citing a conflict of interest. Following a hearing[3], the PCRA court permitted Attorney Rudolph to withdraw, and appointed James E. Tone, Esquire, as PCRA counsel. **See** Order, 10/19/22. Attorney Tone's appointment was terminated on August 9, 2023, after failing to meet the court's deadlines.

The court appointed Bonnie Keagy, Esquire, as PCRA counsel and directed her to file either an amended PCRA petition or motion to withdraw within 90 days. Following two extensions of time, on March 6, 2024, Attorney Keagy filed a petition to withdraw as PCRA counsel with an accompanying **Turner**/**Finley** no-merit letter. On April 1, 2024, the PCRA court issued a notice of its intent to dismiss Appellant's PCRA petition without a hearing and granted Attorney Keagy's request to withdraw as PCRA counsel. Appellant filed a response which essentially reiterated the claims raised in his *pro se* petition. On May 21, 2024, the PCRA court dismissed Appellant's PCRA petition. This appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.[4]

Appellant raises the following issues for our review, renumbered for ease of disposition:

1. Was trial counsel ineffective for failing to object or move for a mistrial based on the Commonwealth's introduction of bad acts

---

[3] A transcript of this proceeding is not in the certified record.

[4] The Commonwealth did not file a brief.

through Mary Bannon's testimony (referencing prior drug sales and prior gun possession)?

2. Was trial counsel ineffective for stipulating to the accuracy of the lab reports which violated [Appellant's] rights under the confrontation clause? *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).

3. Whether PCRA counsel was ineffective under *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021) for not raising the claim that trial counsel was ineffective for failing to file a pre-trial motion to sever the two cases in this matter in light of the prior crimes and/or other crimes evidence which prejudiced the defense during trial?

4. Whether PCRA counsel was ineffective under [*Bradley*] for not raising the claim that trial counsel was ineffective for . . . advising [Appellant] to waive his jury trial because it would be better not to anger the judge as there was no severance or prior/other crime notices filed in the cases, it would inconvenience the court, and if convicted, [Appellant] would get less prison time?

5. Whether PCRA counsel was ineffective under [*Bradley*] for not raising the claim that trial counsel was ineffective for failing to impeach Commonwealth witness Mary Bannon with an open case (CP-46-CR-0008573-2017) consisting of a *crimen falsi* crime?

6. Whether the PCRA court committed an error when it failed to conduct an evidentiary hearing in this case to assess trial counsel's strategic decisions on the record and only accepted PCRA counsel's [*Turner*/]*Finley* letter which contained the out-of-court hearsay statements of trial counsel?

Appellant's Brief, at 4-6.

We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *See e.g., Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010). "The PCRA court's findings will not be disturbed unless there

- 9 -

is no support for the findings in the certified record." ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). "The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court." ***Commonwealth v. Small***, 238 A.3d 1267, 1280 (Pa. 2020) (internal citations omitted).

Appellant raises two claims of trial counsel ineffectiveness: (1) failure to object to and/or request a mistrial based on the introduction of prior bad acts through Bannon's testimony; and (2) stipulating to the accuracy of the lab reports. He also raises three layered claims of PCRA counsel ineffectiveness for failing to raise claims of trial counsel's ineffectiveness in: (1) failing to file a pre-trial motion to sever; (2) advising Appellant to waive his right to a jury trial; and (3) failing to impeach Bannon.

In Pennsylvania, counsel is presumed to have rendered effective assistance. ***Commonwealth v. Orlando***, 156 A.3d 1274, 1281 (Pa. Super. 2017). To overcome this presumption, a petitioner must plead and prove by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. ***Id.*** Our Supreme Court has explained that:

> A chosen strategy will not be found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

- 10 -

Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability, but for counsel's error, the outcome of the proceedings would have been different.

*Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009) (citations omitted). If a petitioner fails to satisfy any one of the three prongs, the claim fails. *Orlando*, 156 A.3d at 1281. "Counsel will not be found ineffective for failing to raise a meritless claim." *Commonwealth v. Brown*, 196 A.3d 130, 151 (Pa. 2018).

Appellant's first claim is that trial counsel was ineffective by failing to object to and/or request a mistrial based on the introduction of prior bad acts in violation of Pa.R.E. 404(b). During the non-jury trial, the Commonwealth elicited the following from Bannon:

Q: Why were you calling [Appellant] to purchase your heroin? Is he your regular dealer?

A: Yes.

Q: How long have you been buying from [Appellant]?

A: About a year.

Q: How often per week?

A: Like twice a week, three times a week.

Q: Do you ever see him with a gun?

A: No. I've never seen him himself with a gun on him.

Q: How about around him?

A: Yeah, in the van.

Q: What van?

A:     The blue van.

Q:     Is that what he normally would pick you up in?

A:     Yes.

N.T. Trial, 3/27/18, at 61-62. Appellant contends that this line of questioning elicited testimony of Appellant's prior bad acts, specifically drug dealing and possessing a firearm, and that trial counsel was ineffective by not objecting or requesting a mistrial based on a violation of Pa.R.E. 404(b).

Rule 404(b) prohibits "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Such evidence may be admissible, however, for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident[,]" so long as the probative value outweighs the potential for unfair prejudice. Pa.R.E. 404(b)(2).

In denying Appellant's claim, the PCRA court found:

The evidence elicited from Ms. Bannon was her own statement about how she knew Appellant and how she encountered him with respect to this crime; it is not evidence of Appellant's prior bad acts to show his propensity to commit a crime. Even if it were, the evidence would have been [] admissible under Rule 404(b) as evidence of intent and modus operandi about the relationship between Ms. Bannon and Appellant. At trial, the defense was aware and was on notice of the evidence that Ms. Bannon alleged Appellant had previously sold drugs to her.

Appellant has failed to prove that even if trial counsel objected to the evidence of Ms. Bannon's prior drug dealings with Appellant, it would have changed the outcome of the trial. Appellant was convicted of possession with intent to deliver because he was found

- 12 -

> to have large quantities of various narcotics in his possession that were too large for personal use. Ms. Bannon's testimony about her own dealings with Appellant was admissible. Trial counsel employed a reasonable trial strategy in failing to object to this portion of Ms. Bannon's testimony.

PCRA Court Opinion, 8/19/24, at 21.

We discern no abuse of discretion. The testimony elicited from Bannon was not admitted to prove that Appellant had a propensity to commit crime. Rather, the testimony detailed the sequence of events that ultimately led to Appellant's arrest. Additionally, even if trial counsel objected to that line of questioning, it would not have changed the outcome of the proceedings because the Commonwealth introduced other admissible evidence that firmly established Appellant's guilt for possession with intent to deliver. Detective Crawford observed Appellant pick up Bannon, drive a short distance away and park. Based on his training and experience, Detective Crawford believed a drug transaction was occurring and approached the vehicle. Detective Crawford subsequently recovered a significant number of narcotics from Appellant's person. Detective Michael Reynolds was admitted as an expert in narcotics trafficking and opined that Appellant possessed the narcotics found on his person with the intent to distribute. Thus, Appellant has failed to prove that he was prejudiced by trial counsel's inaction, and no relief is due.

Appellant's second claim is that trial counsel was ineffective because he stipulated to the accuracy of the lab results after filing a demand for live testimony. We note that the PCRA court initially granted Appellant an evidentiary hearing on this issue. Although a hearing was conducted on

October 18, 2022, we do not know what took place, because the transcript has not been made part of the certified record. However, based on our review, it does not appear that Appellant's trial counsel ever testified.

In denying this claim, the PCRA court found that Appellant failed to establish that he was prejudiced by the stipulation:

> On January 29, 2018, trial counsel filed a demand for live testimony from the person who conducted the lab analysis. Once Appellant decided to have a bench trial rather than a jury trial, a conscious decision was made to not require the Commonwealth to produce a live witness. The parties stipulated as to the identification of narcotics on the NMS lab report dated April 19, 2017. The Commonwealth introduced into evidence the NMS lab report dated April 19, 2017[,] detailing narcotics recovered from Appellant. Trial counsel did not object. In addition, the parties stipulated to the admission of the NMS lab report dated May 2, 2017. This lab report was for Ziploc baggies containing various narcotics. . . .
>
> Trial counsel's strategy at trial was to focus on who possessed the drugs that were found in the car as well as the credibility of the witnesses. Trial counsel did not need to question a lab technician as part of the strategy of his case. There is no evidence that having a live lab technician testify would have changed the outcome of the case. The stipulations to the admission of the NMS lab reports did not violate Appellant's rights under the Confrontation Clause. As a result, the prejudice prong is not met.

PCRA Court Opinion, 8/19/24, at 23-24.

We discern no abuse of discretion. Appellant has not demonstrated how the lab technician's testimony would have changed the outcome of the case. Our review of the record reveals that trial counsel did not question whether the items recovered from Appellant's possession were narcotics. Rather, counsel argued that Appellant did not possess the firearm or narcotics. As for

the firearm, trial counsel argued that the firearm was shoved under the driver's seat by the unidentified male in the rear of Appellant's vehicle. *See* N.T. Trial, 3/27/18, at 179-84. Counsel further argued that Appellant was not the owner of the jacket he was found wearing and therefore was not aware that the pockets contained various narcotics. *See id.* at 184. Likewise, counsel argued that the Commonwealth failed to introduce evidence to prove Appellant had knowledge of the narcotics found inside the fuse box of the Subaru. *See id.* at 185. Therefore, Appellant has failed to prove that he was prejudiced by counsel's decision to stipulate to the lab reports. No relief is due.

Appellant's next three ineffectiveness claims relate to PCRA counsel, Attorney Keagy. Specifically, he contends PCRA counsel was ineffective by not raising claims of trial counsel's ineffectiveness for: (1) failing to file a pre-trial motion to sever the cases; (2) advising Appellant to waive his right to a jury trial; and (3) failing to impeach Bannon.

Since the PCRA court granted Attorney Keagy's motion to withdraw, this is the first opportunity for Appellant to raise claims of her ineffectiveness. *See Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021) ("[A] PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal."). The question then is whether we must remand to the PCRA court for further proceedings or whether "the

record before the appellate court [is] sufficient to allow for disposition of [the] newly-raised ineffectiveness claims." *Id.* at 402.

To obtain relief on a layered claim of ineffectiveness,

appellant must plead and prove that: (1) trial counsel was ineffective for a certain action or failure to act; and (2) [PCRA] counsel was ineffective for failing to raise trial counsel's ineffectiveness. As to each relevant layer of representation, appellant must meet all three prongs of the *Pierce*[5] test for ineffectiveness. A failure to satisfy any of the three prongs of the *Pierce* test requires rejection of a claim of ineffective assistance of trial counsel, which, in turn, requires rejection of a layered claim of ineffective assistance of [PCRA] counsel.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011).

We begin with the claim that PCRA counsel was ineffective for not raising trial counsel's ineffectiveness of failing to file a pre-trial motion to sever the cases.[6] During the non-jury trial, after presentation of evidence in the first case, trial counsel made an oral motion to sever. The trial court denied the motion. Nevertheless, Appellant contends that he was prejudiced by trial counsel's failure to request severance *pre-trial* because "the trier of fact was unlawfully influenced by crimes/bad acts" in the first case when it adjudicated the second case. Appellant's Brief, at 28. Specifically, he argues that the evidence from the first case "painted [Appellant] as one constantly engaging

---

[5] *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987).

[6] As noted above, the Commonwealth did not file a formal motion to consolidate because it believed the cases were administratively consolidated. Trial counsel stated that he did not request severance because the cases were never consolidated. N.T. Trial, 3/27/18, at 107-08. Our review of the record shows that the cases were consolidated by court order on July 31, 2017.

in 'heroin dealing' in Norristown[;]" therefore, any argument that Appellant was *not* in possession of narcotics in the second case "carried no weight with the trier of fact." ***Id.*** at 29.

Appellant has failed to demonstrate that the outcome of the proceedings would have been different had the court granted severance. He does not point to anything the court said which suggested that its decision in one case was influenced by the evidence in the other case. Moreover, the evidence in each case was overwhelming.

In the first case, Detective Crawford observed Bannon, a woman he knew from prior contacts engaged in sex work and drug use, enter Appellant's blue van. The vehicle drove a short distance away and parked. Detective Crawford believed this was a drug transaction based on his training and experience. He approached the vehicle and asked Appellant, the driver, to exit. Due to Appellant's behavior, he was handcuffed and patted down for officer safety. During the pat-down, Officer Keenan observed several bundled bags of suspected heroin inside his jacket pocket. A lab test confirmed the bags contained controlled substances. Appellant was arrested and his vehicle was towed. A search warrant was obtained and executed. A firearm was recovered from underneath the driver's seat.

In the second case, a confidential informant ("CI") told Officer Keenan that he recently purchased narcotics from someone named "Ant," whom Officer Keenan believed was Appellant. Based on information from the CI, Officer Keenan set up surveillance to look for a blue Subaru station wagon.

Officer Keenan located the Subaru, which was registered to Appellant, and conducted a traffic stop. Appellant was driving the vehicle. Once again, due to Appellant's behavior, Officer Keenan asked him to exit the vehicle and patted Appellant down for officer safety. During the pat-down, Officer Keenan felt a rocklike substance which he believed was crack cocaine. Appellant was arrested and his vehicle was towed. A search warrant was obtained and executed. Officers discovered a large quantity of various narcotics concealed in the dashboard of the driver's seat area. In addition, officers recovered four cell phones that were "ringing constantly" during execution of the warrant.

In both cases, Detective Reynolds gave expert testimony that Appellant possessed the narcotics with the intent to distribute. N.T., Trial 3/27/18, at 155, 160. His opinion was based on the quantity of narcotics, the way in which they were packaged, and the storage of various amounts of money in different places on Appellant's person and in the vehicle. *Id.* at 155-58, 160-64. Additionally, Detective Reynolds testified that drug dealers typically carry a weapon and utilize multiple cell phones. *Id.* at 159, 163.

Given this overwhelming evidence of guilt, Appellant fails to demonstrate that he suffered prejudice from trial counsel's failure to request severance of his cases. It follows that Appellant's layered claim regarding PCRA counsel's ineffectiveness for failing to pursue this issue must also fail. No relief is due.

Appellant's next ineffectiveness claim is that PCRA counsel failed to raise trial counsel's ineffectiveness in advising Appellant to waive his right to a jury

trial. According to Appellant, trial counsel advised him to waive his right to a jury trial based on the following: (1) the cases were not properly consolidated, and demanding jury trials in both would inconvenience the court; (2) the judge would be angry if forced to schedule and conduct two jury trials; and (3) if angry, the judge would ensure Appellant was convicted by an "all-white" jury and sentence Appellant to the maximum. *See* Appellant's Brief, at 37. He further claimed that by waiving his right to a jury, trial counsel abandoned their agreed-upon defense for docket number 3259-2017.[7] *Id.*

The right to a jury trial is enshrined in both the United States and Pennsylvania Constitutions. *See* U.S. Const. amend. VI; Pa. Const. art. I, § 6. Waiver of the right to a jury trial is governed by Pa.R.Crim.P. 620, which provides:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620. We are guided by the following principles:

> The essential elements of a jury waiver, though important and necessary to an appreciation of the right, are nevertheless simple to state and easy to understand. The essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's

---

[7] Appellant did not elaborate what that defense was.

peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel.

*Commonwealth v. Mallory*, 941 A.2d 686, 696-97 (Pa. 2008) (quotation marks and brackets removed).

"When a presumptively-valid waiver is collaterally attacked under the guise of ineffectiveness of counsel, . . . the analysis must focus on the totality of relevant circumstances." *Id.* at 698. Such circumstances include "the defendant's knowledge of and experience with jury trials, his explicit written waiver (if any), and the content of relevant off-the-record discussions counsel had with his client." *Id.* Thus, to show prejudice, a defendant must "demonstrate a reasonable probability that but for counsel's constitutionally deficient service, the outcome of the waiver proceeding would have been different, *i.e.*, that he would not have waived his right to a jury trial." *Id.* at 704.

The totality of the circumstances revealed that Appellant fully understood the essential components of a jury trial and made an informed decision to proceed to a non-jury trial. Not only did Appellant complete a written waiver, but the court conducted an oral colloquy on the record. *See* Waiver of Jury Trial, 3/27/18; N.T. Trial, 3/27/18, at 7-10. The trial court verified that trial counsel explained to Appellant (1) the difference between a jury and bench trial; (2) the verdict must be unanimous; and (3) Appellant could participate and assist trial counsel in jury selection. N.T. Trial, 3/27/18, at 9. The trial court also colloquied Appellant as follows:

Q:     Is this the waiver of jury trial form that you signed this morning?

A:     Yes.

Q:     And by signing that form, you've indicated that you wish to waive a jury and have the court hear this case?

A:     Yes.

Q:     That's a decision that you made in consultation with your attorney[?]

A:     Yes.

Q:     And did you make that decision – did you have enough to time to speak with [your attorney]?

A:     Yes.

Q:     And the decision to waive a jury and let this Court decide the case at a bench trial is one that you made of your own free will?

A:     Yes.

* * * *

Q:     So knowing those distinctions and knowing everything that I just said and everything you spoke to [your attorney] about, is it your desire to waive a jury and proceed today with a bench trial?

A:     Yes.

N.T. Trial, 3/27/18, at 8-10. Appellant's colloquy indicates that he understood the "essential ingredients" of a jury trial and elected to waive that right of his own volition. Appellant's claim that trial counsel was ineffective for coercing him to waive his right to a jury trial requires accepting that Appellant lied while under oath. A PCRA petitioner "may not obtain post-conviction relief by

claiming that he lied during his waiver colloquy." ***Commonwealth v. Bishop***, 645 A.2d 274, 277 (Pa. Super. 1994). Appellant stated that he had ample time to consult with his attorney and decided to waive his right to a jury trial. Appellant is bound by the statements he made during his oral colloquy.

Because the record shows that Appellant entered a voluntary, knowing and intelligent jury waiver, his ineffectiveness claim against trial counsel lacks arguable merit and the claim fails. It follows that Appellant's layered claim regarding PCRA counsel's ineffectiveness for failing to pursue this issue must also fail. No relief is due.

Appellant's final claim of PCRA counsel ineffectiveness is the failure to raise trial counsel's ineffectiveness of not impeaching Bannon with an open case with a *crimen falsi* offense. Appellant waived this claim by failing to include it in his concise statement. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); ***Commonwealth v. Castillo***, 888 A.2d 775, 780 (Pa. 2005) ("Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived").

Lastly, Appellant argues that the PCRA court abused its discretion by declining to hold an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion. ***Commonwealth v. Williams***, 244 A.3d 1281, 1287 (Pa. Super. 2021) (citation omitted). The right to an evidentiary hearing on a PCRA petition is not absolute; "[i]t is within the PCRA court's discretion to decline to hold a

hearing if the petitioner's claim in patently frivolous and has no support either in the record or other evidence." *Id.* Moreover,

> [t]o obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Roney*, 79 A.3d 595, 605 (Pa. 2013) (quotation marks and citations omitted). "[A]n evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim[.]" *Id.*

Appellant argues that all the issues he presented to the PCRA court were meritorious and involved genuine issues of material fact. *See* Appellant's Brief, at 50-57. The PCRA court disagreed, stressing that it extensively reviewed the record and provided Appellant a 26-page notice of intent to dismiss without a hearing detailing why there were no issues upon which it would grant PCRA relief. As discussed *supra*, we agree with the PCRA court that Appellant does not raise any genuine issues of material fact that would entitle him to relief. Thus, we find no abuse of discretion in the PCRA court's denial of an evidentiary hearing.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/11/2025</u>